UNITED STATES *v.* URBUTEIT.

No. 13.   Argued October 13–14, 1948.—Decided November 22, 1948.

*Solicitor General Perlman* argued the cause for the United States.   With him on the brief were *Philip Elman, William W. Goodrich* and *Bernard D. Levinson.*

*H. O. Pemberton* argued the cause and filed a brief for respondent.

Opinion of the Court by MR. JUSTICE DOUGLAS, announced by MR. JUSTICE REED.

The United States filed a libel under the Federal Food, Drug, and Cosmetic Act (52 Stat. 1044, 21 U. S. C. § 334),

seeking seizure of 16 machines labeled "Sinuothermic." The libel alleged that the device was misbranded within the meaning of the Act (52 Stat. 1050, 21 U. S. C. § 352 (a)) in that representations in a leaflet entitled "The Road to Health" relative to the curative and therapeutic powers of the device in the diagnosis, cure, mitigation, treatment and prevention of disease were false and misleading. It charged that the leaflet had accompanied the device in interstate commerce.

Respondent, Fred Urbuteit, appeared as claimant of several of the devices. He admitted that the devices and leaflets had been shipped in interstate commerce, but denied that they were shipped together or that they were related to each other. He also denied that the statements made in the leaflet were false or misleading. The case was tried without a jury and the articles were ordered condemned. The judgment was reversed by the Court of Appeals. 164 F. 2d 245. The case is here on certiorari to resolve the conflict between it and *Kordel* v. *United States, ante,* p. 345.

Respondent Urbuteit terms himself a naturopathic physician and conducts the Sinuothermic Institute in Tampa, Florida. The machines against which the libel was filed are electrical devices allegedly aiding in the diagnosis and cure of various diseases and physical disorders such as cancer, diabetes, tuberculosis, arthritis, and paralysis. The alleged cures effected through its use are described in the allegedly false and misleading leaflet, "The Road to Health," published by Urbuteit and distributed for use with the machines.

Urbuteit shipped from Florida a number of these machines to one Kelsch, a former pupil of his who lives in Ohio. Kelsch used these machines in treating his patients and, though he did not receive them as a merchant, he sold some to patients. As part of this transaction Urbuteit contracted to furnish Kelsch with a supply of leaflets,

which were sent from Florida to Ohio at a different time than when the machines were forwarded. Kelsch used the leaflets to explain the machines to his patients.

The leaflets seem to have followed the shipment of the machines. But as *Kordel* v. *United States* holds, that is immaterial where the advertising matter that was sent was designed to serve and did in fact serve the purposes of labeling. This machine bore only the words, U. S. Patent Sinuothermic Trade Mark. It was the leaflets that explained the usefulness of the device in the diagnosis, treatment, and cure of various diseases. Measured by functional standards, as § 201 (m) (2) of the Act permits, these leaflets constituted one of the types of labeling which the Act condemns.

The power to condemn is contained in § 304 (a) and is confined to articles "adulterated or misbranded when introduced into or while in interstate commerce." [1] We do not, however, read that provision as requiring the advertising matter to travel with the machine. The reasons of policy which argue against that in the case of criminal prosecutions under § 303 are equally forcible when we come to libels under § 304 (a). Moreover, the common sense of the matter is to view the interstate transaction in its entirety—the purpose of the advertising and its actual use. In this case it is plain to us that the movements of machines and leaflets in interstate commerce were a single interrelated activity, not separate or isolated ones. The Act is not concerned with the purification of the stream of commerce in the abstract.

---

[1] The relevant portion of this section reads as follows:

"Any article of food, drug, device, or cosmetic that is adulterated or misbranded when introduced into or while in interstate commerce . . . shall be liable to be proceeded against while in interstate commerce, or at any time thereafter, on libel of information and condemned in any district court of the United States within the jurisdiction of which the article is found . . . ."

The problem is a practical one of consumer protection, not dialectics. The fact that the false literature leaves in a separate mail does not save the article from being misbranded. Where by functional standards the two transactions are integrated, the requirements of § 304 (a) are satisfied, though the mailings or shipments are at different times.

The Court of Appeals held that certain evidence tendered by Urbuteit as to the therapeutic or curative value of the machines had been erroneously excluded at the trial, a ruling that we are not inclined to disturb. Petitioner claims, however, that the error was not prejudicial. The argument is that since the evidence of the false and misleading character of the advertising as respects the diagnostic capabilities of the machines was overwhelming, that false representation was adequate to sustain the condemnation, though it be assumed that the therapeutic phase of the case was not established. We do not reach that question. Since the case must be remanded to the Court of Appeals, that question and any others that have survived will be open for consideration by it.

*Reversed.*

Mr. Justice Black, Mr. Justice Frankfurter, Mr. Justice Murphy, and Mr. Justice Jackson dissent for the reasons stated in their dissent in *Kordel* v. *United States, ante,* p. 345, decided this day, although this case arises under the limitation of § 304 (a), "while in interstate commerce," which has a different scope from § 301 (k), while "held for sale after shipment in interstate commerce."