**UNITED STATES v. ALBERTY FOOD PRODUCTS et al.**

No. 10322.

United States District Court
S. D. California, Central Division.
June 8, 1951.

Ernest A. Tolin, U. S. Atty., Max F. Deutz, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

O'Connor & O'Connor, Los Angeles. Cal., for defendants.

MATHES, District Judge.

The Government invokes the jurisdiction of this Court under § 302(a) of the Federal Food, Drug and Cosmetic Act, 52 Stat. 1043, 21 U.S.C.A. § 332(a), to enjoin alleged violations by defendants of § 301 which prohibits "introduction * * * into interstate commerce of any * * * drug * * * that is * * * misbranded." 21 U.S.C.A. § 331(a).

The amended complaint for injunction alleges *inter alia:*

That defendants are "the manufacturers, packers and distributors of certain articles of drug * * *";

That "For some years, defendants have introduced said articles of * * * drug into interstate commerce, and have caused said articles to be accompanied by various leaflets and booklets when introduced into and while in interstate commerce and while held for sale after shipment in interstate commerce. Said leaflets and booklets are entitled 'Calcium, The Staff of Life' [Exhibit 30]; 'Dynamic Digests' [Exhibit 31]; 'Is There Hope

That Graying Hair Can Be Restored? Read What Science Says—Pandora' [Exhibit 32]; 'Health Mysteries' [Exhibit 33]; 'Reduce! Streamline Your Figure—Follow the 5 Factor Cheno Plan' [Exhibit 34]; 'Happy Figures by the Cheno Plan' [Exhibit 35]. Each of these booklets and leaflets relates to one or more of the above mentioned articles of drug * * *";

That "At all times, the aforesaid articles of drug, when introduced into interstate commerce, have been and are now misbranded within the meaning of section 502(f) (1) of the Act, 21 U.S.C.A. § 352(f) (1), in that their labelings fail to bear adequate directions for use for the purposes and conditions for which they are intended."

At pretrial hearing the parties stipulated:

(1) That "defendants' products referred to in the Amended Complaint for Injunction are drugs and are shipped interstate by the defendants."

(2) That "Defendants ship all of their products in interstate commerce to health food retail outlets and intend to continue so shipping these products. Defendants also ship these products interstate direct to ultimate consumers in response to mail orders from such persons."

(3) That "Defendants are currently distributing [the above mentioned literature] interstate in the following ways * * *:

"(a) Defendants obtain the names and addresses of prospective customers from the retail outlets to which they sell their products. Defendants mail said literature to said prospective customers, and on such literature defendants print the name and address of the retail outlet that furnished such names and addresses.

"(b) Defendants also obtain the names and addresses of prospective customers from demonstrators who are hired by the defendants to work in retail outlets and there promote the sale of defendants' products. Defendants mail the aforesaid literature to said prospective customers, and on such literature defendants print the name and address of a retail outlet located in the same area as the prospective customer.

"(c) Defendants also obtain the names and addresses of prospective customers when individuals write in to the defendants for literature or to submit mail orders. Defendants mail the aforesaid literature to said prospective customers, and on such literature defendants print the name and address of a retail outlet located in the same area as the prospective customer."

Section 201 of the Act provides in part that:

"(k) The term 'label' means a display of written, printed, or graphic matter upon the immediate container of any article; and a requirement * * * that any word, statement, or other information appear on the label shall not be considered to be complied with unless such word, statement, or other information also appears on the outside container or wrapper, if any there be, of the retail package of such article, or is easily legible through the outside container or wrapper.

"(l) The term 'immediate container' does not include package liners.

"(m) The term 'labeling' means all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article."

The parties have stipulated to the identity and content of the label used "upon the immediate container" of each article, and further that such "label", 21 U.S.C.A. § 321(k, l), constitutes the entire "labeling", 21 U.S.C.A. § 321(m), as to each article, unless the above mentioned "literature" is to be considered as "accompanying such article" in interstate commerce within the meaning of § 201(m) (2) of the Act, 21 U.S.C.A. § 321(m) (2).

Based upon the facts established by the pleadings and the pretrial stipulations, the Government has moved for summary judgment upon the ground: "That there are no facts in dispute with respect to that portion of the Amended Complaint which seeks an injunction under 21 U.S.C.A. § 332(a) to restrain defendants from violating 21 U.S.C.A. § 331(a) through the continued interstate shipment of drugs that

are misbranded in violation of 21 U.S.C.A. § 352(f) (1)", which provides that: "A drug * * * shall be deemed to be misbranded * * * (f) unless its labeling bears (1) adequate directions for use * * *."

In order to determine whether the labeling as to any "drug", 21 U.S.C.A. § 321(g), bears "adequate directions for use" within the meaning of the Act it is necessary of course first to ascertain what comprises "its labeling." Section 201(m) declares that: "The term 'labeling' means all labels (see 21 U.S.C.A. § 321(k, l) and other written, printed or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C.A. § 321(m).

In Kordel v. United States, 1948, 335 U.S. 345, 347, 348, 69 S.Ct. 106, 108, 93 L.Ed. 52, where "the literature involved * * * was shipped separately from the drugs and at different times" but "had a common origin and a common destination", the literature was held to accompany the drugs in interstate commerce within the meaning of the Act, 21 U.S.C.A. § 321 (m), and so to comprise a part of the "labeling." See also United States v. Urbuteit, 1948, 335 U.S. 355, 69 S.Ct. 112, 93 L.Ed. 61; United States v. Research Laboratories, Inc., 9 Cir., 1942, 126 F.2d 42, 45.

As in the cases just cited, the literature involved at bar explains the claimed beneficial uses of each drug and was obviously "designed for use in the distribution and sale"; while the "label" itself is either totally or practically silent as to the purpose for which the drug is to be used; and usually, but not invariably, both the drug and the literature describing it have a common point of origin in interstate commerce. The point of difference in the case at bar is that generally speaking the article and the literature do not have a common destination, since defendants usually ship the drugs to a retail outlet, while the literature is shipped directly to prospective consumers.

Thus the precise question on this phase of the case is whether the literature may properly be held to accompany the drug in interstate commerce within the meaning of 21 U.S.C.A. § 321(m) (2), where the destination of the literature when shipped is not the distributor or consumer of the drug.

The policy of the Act seems clearly to require that "labeling", 21 U.S.C.A. § 321(m), which bears "adequate directions for use", 21 U.S.C.A. § 352(f) (1), of the drug be placed "upon the immediate container", 21 U.S.C.A. § 321(k, l), or accompany the container so closely that the ordinary consumer will be apprised of all directions, cautions and other information appearing thereon.

Section 201(k) provides that "a requirement * * * that any word, statement, or other information appear on the label shall not be considered to be complied with unless such word, statement, or other information also appears on the outside container or wrapper, if any there be, of the retail package of such article, or is easily legible through the outside container or wrapper." 21 U.S.C.A. § 321(k).

Section 201(n) provides that: "If an article is alleged to be misbranded because the labeling is misleading, then in determining whether the labeling is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article to which the labeling relates under the conditions of use prescribed in the labeling thereof or under such conditions of use as are customary or usual." 21 U.S.C.A. § 321(n).

And § 502 declares that: "A drug or device shall be deemed to be misbranded—

"(a) If its labeling is false or misleading in any particular. * * *

"(c) If any word, statement, or other information required * * * to appear on the label or labeling is not prominently placed thereon with such conspicuousness (as compared with other words, statements,

designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use. * * *

"(f) Unless its labeling bears (1) adequate directions for use; and (2) such adequate warnings against use in those pathological conditions or by children where its use may be dangerous to health, or against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users: * * *

"(j) If it is dangerous to health when used in the dosage, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof." 21 U.S.C.A. § 352(a, c, f, j).

Nothing more than a reading together of these quoted provisions of the Act is required to demonstrate the emphasis placed by the Congress upon the contents of the labeling as a means of protecting the consumer, as well as the legislative intent that the labeling so closely accompany the drug into the hands of the consumer "as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use", 21 U.S.C.A. § 352(c); see Alberty Food Products v. United States, 9 Cir., 1950, 185 F.2d 321.

■ Where, as here, the literature and drugs do not have a common destination and the literature is not shipped to either a distributor or a consumer of the drug, it would be in derogation of the policy and purposes of the Act to broaden further the content of the verb "accompany" as employed in § 201(m) (2), 21 U.S.C.A. § 321(m) (2). See United States v. Dotterweich, 1943, 320 U.S. 277, 280, 64 S.Ct. 134, 88 L.Ed. 48. So it is my opinion that the scope of "accompanying" should be limited under Kordel v. United States, supra, 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52, and United States v. Urbuteit, supra, 335 U.S. 355, 69 S.Ct. 112, 93 L.Ed. 61, to cases where the literature has the same destination as the drug and hence

will likely reach the hands of the consumer to serve the purposes for which labeling is intended. Cf. Alberty v. United States, 9 Cir., 1947, 159 F.2d 278; also Alberty Food Products v. United States, supra, 185 F.2d at page 325.

■ It follows that in the case at bar the literature must be held as not "accompanying" the drugs in interstate commerce and therefore as not constituting a part of the "labeling." 21 U.S.C.A. § 321(m) (2). The "labels" alone then on each of the drugs in question, 21 U.S.C.A. § 321(k), must be held to comprise the entire "labeling" as to such drug.

There remains the question whether the "labeling" bears "adequate directions for use" within the meaning of § 502(f) (1) of the Act, 21 U.S.C.A. § 352(f) (1).

■ Labeling fails to bear "adequate directions for use," if it does not state "the purpose or condition for which the drug was intended," as well as the dosage and frequency or duration of taking prescribed, recommended or suggested in connection with the diseases or conditions of the body for which such drug is held out to the public. See 21 U.S.C.A. §§ 321(n), 352(f, j), 371(a,); 21 Code Fed.Regs. § 1.106 (1949); Colgrove v. United States, 9 Cir., 1949, 176 F.2d 614, 616; United States v. Various Quantities * * * "Instant Alberty Food," D.C.D.C.1949, 83 F.Supp. 882, 885.

As Judge Bone said in Alberty Food Products v. United States, supra, 185 F.2d at page 325: "We proceed upon the assumption that the 'adequate directions for use' mandate of Sec. 352(f) (1) requires that *all* who might want to use a drug * * * are at least entitled to a chance to somewhere find and examine a 'label' which is complete enough to * * * provide sufficient information at the time of purchase upon which intelligent determination might be made as to whether the drug is one which is prescribed, recommended, or suggested for their particular * * * ailment. We are persuaded that the law requires this much."

■ The following is typical of the "labeling" of a majority of the drugs in the case at bar:

"ALBERTY'S
SABINOL
Homeopathic
App. 525 Pellets
Each Pellet Contains
Berberis Vulgaris
Lycopodium

Manufactured for and Packed by AL-BERTY FOOD PRODUCTS

Hollywood, California

Directions:

Take 3 Pellets every 2 hours until relieved. Then 4 times daily."

Similar labels appear on defendants' products identified as:

Alberty's Vegetable Compound Capsules [Exhibit 1];

Alberty's Oxorin [Exhibit 2];

Alberty's Food Regular [Exhibit 3];

Instant Alberty Food [Exhibit 4];

Alberty Garlic Perles (Alberty Garlic and Vegetable Oil Perles) [Exhibit 5];

Alberty's Sabinol [Exhibit 6];

Alberty Phloxo B Tablets [Exhibit 7];

Alberty's Phosphate Pellets [Exhibit 8];

Alberty's Ri-Co Tablets [Exhibit 10];

Alberty Special Formula Tablets [Exhibit 11];

Wheat Germ Oil [Exhibit 14];

Alberty's Lebara Pellets, Plain [Exhibit 17];

Alberty's Lebara No. 2 Pellets [Exhibit 18];

Cheno Phytolacca Berry Juice Extract Tablets and Cheno Phytolacca Berry Juice [Exhibit 20];

Cheno Combination Tablets [Exhibit 21];

Pandora Tablets [Exhibit 22];

Recal Tablets [Exhibit 23]; and Alberty's Ca-Mo Pellets [Exhibit 27].

Such "labeling" fails to state either "the purpose or condition for which the drug was intended" or the duration of taking recommended for treatment of the diseases or conditions of the body for which the drug is held out to the public in defendants' literature.

The remaining "drugs" involved at bar, to wit:

Alberty Riol Tablets [Exhibit 9];

Alberty's Vitamin A (High Potency) Shark Liver Oil [Exhibit 12];

Alberty's Vi-C [Exhibit 13];

Alberty Vitamin B Complex Tablets with High-Potency B 1 [Exhibit 15];

Alberty's Vitamin B 1 Tablets with Supplementary Amounts of Other B-Complex Factors [Exhibit 16];

Cheno Herb Tea [Exhibit 19];

Alberty's Vio-Min Vitamin-Mineral Tablets [Exhibit 24];

Alberty R-Gon Tablets [Exhibit 25];

Alberty's Laxative Blend Tea [Exhibit 26];

Alberty's Vitamin A & G Capsules [Exhibit 28]; and Alberty Rego [Exhibit 29]

may be classed as so-called dietary supplements and laxatives. As such "the purpose or condition for which the drug was intended" is a matter of common knowledge.

However defendants in their literature admittedly recommend these "drugs" without exception for other than commonly known uses. For example, defendants recommend their Vitamin B 1 Tablets [Exhibit 16] in the pamphlet "Calcium—The Staff of Life" [Exhibit 30] for "preventing chronic ill health"; for "certain cases of heart disease" and "some cases of arthritis and neuritis"; for increasing "the body's insulin output and sugar tolerance"; and for "improving the intelligence of school children."

Yet the only directions for use appearing on the "labeling" of Alberty's Vitamin B₁ Tablets are: "*Directions*—Two tablets, three times daily (six tablets a day) furnish 3½ times the minimum daily requirements of Vitamin B₁ for an adult, and 1/10 such requirements of Vitamin B₂."

Comment on the manifest inadequacy of such labeling to give "adequate directions for use" for the purposes recommended in

defendants' literature would be surplusage indeed.

 The facts as to the "labeling" of each "drug" at bar being admitted, the Government is entitled to summary judgment for a writ of injunction permanently enjoining and restraining defendants from "the introduction or delivery for introduction into interstate commerce", 21 U.S. C.A. § 331(a), of any of the "drugs" involved in this action unless and until the labeling of each such "drug" bears adequate directions for the use thereof in the treatment of the diseases and conditions of the body for which defendants in their literature and other advertising prescribe, recommend or suggest its use. Colgrove v. United States, supra, 176 F.2d 614; id, D.C.S.D.Cal.1947, 83 F.Supp. 880.

Accordingly the Government's motion for summary judgment is granted, and the United States Attorney will submit proposed findings of fact, conclusions of law and judgment pursuant to local rule 7 within ten days.