## UNITED STATES of America

v.

VITASAFE CORPORATION, a corporation, Nutritional Quality Controls, Inc., a corporation, the Dollar Vitamin Plan, Inc., a corporation, Life Nutrition, Inc., a corporation, International Oil and Metals Corporation, a corporation, Dr. Parker Medicine Company, a corporation, Philip S. Volosov, an individual, and Henry D. Cohen, an individual, Defendants.

Civ. A. No. 781-64.

United States District Court
D. New Jersey.

Sept. 4, 1964.

David M. Satz, Jr., U. S. Atty. for Dist. of New Jersey, by Vincent J. Commisa, Asst. U. S. Atty., for plaintiff.

Herbert S. Alterman, Passaic, N. J., for defendant (Milton A. Bass, Bass & Friend, New York City, appearing).

LANE, District Judge.

In an opinion filed January 24, 1964, United States v. "Vitasafe Formula M * * *", D.C., 226 F.Supp. 266, this court granted the government a decree of condemnation for certain vitamin products and advertising materials used in connection therewith, earlier held to constitute labeling therefor, 226 F.Supp. at 269, footnote 1. The grounds for the decree were that the assertions contained in the labeling gave impressions to the user which were misleading and contrary to fact in violation of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq.; 226 F.Supp. at 278–279. The decree of condemnation was filed on April 10, 1964.

The Vitasafe Corporation, claimant in the condemnation suit, is one of a group of corporations, defendants in the pres-

ent case, which distributes vitamins and similar products to the general public. Although the defendant companies are separate entities, they share officers and directors to a significant extent (see appended chart).

Legend:

- *V.S. = Vitasafe Corporation
- Nut. = Nutritional Quality Controls, Inc.
- $ $ = The Dollar Vitamin Plan, Inc.
- Life = Life Nutrition, Inc.
- I.O. = International Oil and Metals Corporation
- Dr. P. = Dr. Parker Medicine Company

| Name | Director, V.S.* | Officer, V.S. | Director, Nut.* | Officer, Nut. | Director, $ $* | Officer, $ $ | Director, Life* | Officer, Life | Director, I.O.* | Officer, I.O. | Director, Dr. P.* | Officer, Dr. P. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Samuel Josephowitz | X | X | | | | | X | | | | | |
| David Josephowitz | X | X | | | | | | | | | | |
| Leon Potash | X | X | | X | | X | X | X | | | | |
| Henry D. Cohen | | X | | | | | | X | | | | |
| Adolf W. Goldschidt | | X | X | | X | X | X | X | | | | |
| Benjamin Oren | | X | X | | | | | | | | | |
| Arthur P. Silverstein | | X | X | | X | X | X | | | | | |
| William H. Sylk | | | | | | X | X | X | | | | |
| Harry S. Sylk | | | | | | | X | | | | | |
| Benjamin Lerner | | | | | | X | X | | | | | |
| Leonard Joseph | | | | | | | | X | | | | |
| Louis Robbins | | | | | | | | X | | | | |
| Gordon Holt | | | | | | | | | X | | | |
| Philip Volosov | | | | | | | | | | | X | X |
| Ben Cale | | | | X | | | | | | | | |

Their mail order businesses are centered in the same place and conducted in the same manner by the same personnel. None of the companies manufacture vitamins; they repackage drugs bought in bulk and resell them by mail. The style of their ads, customer service programs, vitamin containers, and other literature is strikingly similar. In short, while separately incorporated, all defendant companies are parts of the same operation and in substance are one.

Since the signing of the condemnation decree, the Vitasafe corporation has ceased its distribution of the series of circulars condemned. But Vitasafe has

continued to service the clients which it had obtained prior to the decree. And the defendant corporations have continued the Vitasafe advertising campaign in their own names using circulars similar but not identical to those condemned in the Vitasafe action.

On August 17, 1964, the United States filed in this court a complaint for injunction against these six corporations and two individuals connected therewith. Pursuant to the complaint, the court issued a temporary restraining order on that date. The order restrained defendants, *inter alia*, from distributing or otherwise using literature which is objectionable under the condemnation opinion. It further specified a number of circulars which were not to be used.

The order also prohibited defendants from:

"Introducing and causing to be introduced and delivering and causing to be delivered for introduction into interstate commerce any of the aforesaid articles which are addressed (a) to any persons to whom defendants have previously sent any of the items of written, printed, and graphic matter and referred to in paragraph A(a) above, and (b) to any person who has sent to the defendants any of the order forms or order blanks which have been mailed by the defendants prior to the date of this decree or which have appeared in any newspaper, magazine, Sunday supplement or other advertisement prior to the date of this decree."

A hearing was held to allow a determination by this court of defendants' motion for relief from portions of the restraining order. The parties agreed that the court would consider together the motion for relief and the government's application for preliminary injunction.

### Present Labeling

■ The government has established that both before and after the decree defendants used some material which would be subject to condemnation under the terms of the "Vitasafe Formula M * * *" opinion. An injunction will therefore issue prohibiting defendants from distributing any labeling which falls within the categories we have heretofore ruled misleading: specifically, labeling which when viewed as a whole:

1. Suggests or implies that a woman, because of sex alone, has different nutritional needs than a man, and that their product will satisfy those special needs.

2. Suggests or implies that the nutritional value of their product is enhanced by the presence in their product of certain listed ingredients.

3. States or represents that the "Minimum Adult Daily Requirements" are a recommendation of the Food and Nutrition Board of the National Academy of Science National Research Council.

4. Represents, suggests, or implies that large amounts of common foods would need to be consumed in order to obtain the quantities of nutrients present in one capsule of any of the articles.

5. Represents, suggests, or implies that the product is an adequate, effective treatment of or preventative for a listed series of symptoms.

6. Represents the product to be of value because it contains "lipotropic factors" while failing to bear adequate directions for use as a drug.

■ The government also seeks provisions enjoining defendants from using specific pieces of literature in connection with their products. The ads and circulars complained of are similar in style and content to those condemned, but are different from the earlier ones in significant details. We think that under the circumstances, such an enjoining provision would be an unwise specification of the six general sections of the injunction indicated. If the government's contentions are sound, and it wishes to halt the use of these materials, it should do so under these broader terms. It would be premature and overhasty for us to decide now both the content of the injunction and the instances which will be

held to fall within its terms. A fuller, more careful consideration of the facts than is here possible in the urgency of these injunction proceedings would be required to determine precisely which of defendant's statements do and which do not make the prohibited suggestions or implications. For that reason, the preliminary injunction should not contain a prohibition of the distribution and use of specific literature.

## Service to Past Customers

For several years, defendant Vitasafe sought customers for its products through direct mail and "pulp" magazine advertising. The aim of this campaign was to enlist members of the public in one of the Vitasafe "plans" whereby a monthly supply of vitamins would be sent to the customer's home in return for monthly payments. It was this advertising which was, *inter alia,* the subject of the government's successful condemnation suit.

While the mailing of the offending materials by Vitasafe has been, we are assured, brought to a halt, the government seeks to enjoin Vitasafe and the other defendants from further servicing accounts which were gained during the period of mislabeling.

The first asserted ground for this injunctive provision is that Vitasafe ought not to be allowed to enjoy the fruits of their wrongdoing; they ought not to enjoy a profit from customers wrongfully obtained.

■ This argument is unsatisfactory because it apparently misconstrues the thrust of the condemnation action under which the injunction is sought. That action was *in rem,* see United States v. 91 Packages, More or Less, Nutrilite Food Supplement, 93 F.Supp. 763 (D.N.J. 1950), and was brought against the advertising itself and not against the Vitasafe Company. It established only that said advertising was false and misleading. It did not and could not conclude that claimant was a wrongdoer. The character of Vitasafe's conduct in connection with the condemned literature

was irrelevant to the action. United States v. 3963 Bottles, more or less, labeled Enerjol Double Strength, 265 F.2d 332 (7th Cir. 1959), cert. denied, 360 U.S. 931, 79 S.Ct. 1448, 3 L.Ed.2d 1544 (1959). We are therefore unable to draw a parallel between the case at bar and United States v. United States Gypsum Co., 340 U.S. 76, 71 S.Ct. 160, 95 L. Ed. 89 (1950). There, the Supreme Court said that wrongdoers in civil cases (in that instance, conspirators under the Sherman Act) could and should be restrained from capitalizing on past misdeeds. But there is nothing in the condemnation proceeding on which the injunction here is based which determines that Vitasafe is a wrongdoer. So the company ought not to be enjoined from continued client service on this basis.

The facts of this case suggest other, more tenable, grounds for the restraint. In the Vitasafe condemnation decree opinion, 226 F.Supp. 266 at page 269, footnote 1, we restated our opinion that the advertising circulars in question were labeling within the meaning of the Act. We said that it was labeling,

"* * * since used and designed solely for the purpose of increasing the sale and use of the product; a part of the integrated system of distribution used by claimant in marketing subject capsules. Physical proximity of the advertising to the product in question is not necessary for a finding that the advertising is labeling thereof. [Citing cases.]"

The vitamin capsules and the literature were condemned solely because together they constituted mislabeled food or drugs.

Present consumers of Vitasafe products became customers as subjects of the condemned ads. Any vitamins sold by Vitasafe to such customers now are as much mislabeled by that advertising as if they had been sold before the condemnation decree. The discontinued circulars remain labeling for Vitasafe products in the minds of those previously

subjected to it. This is the import of Judge Meaney's decision in United States v. 46 Cartons, more or less, containing Fairfax Cigarettes, 113 F.Supp. 336 (D. N.J.1953).

The condemned labeling was the substance of a long and concerted campaign by Vitasafe. It is fairly inferable from the facts that the vast majority of pre-decree customers were enticed into the Vitasafe net by false and misleading labeling. Furthermore, the literature which Vitasafe and its associate companies have used of late in connection with both old and new customers, innocuous though some of it may be, tends to reinforce, by similarity in content and form, the effect of the earlier mislabeling.

It is therefore our opinion that the condemned advertising mislabeled all Vitasafe products which were or will be sent to customers obtained prior to the decree. It is necessary and proper, in order to prevent further distribution of mislabeled vitamins, to restrain and enjoin defendant Vitasafe's continued distribution to these customers.

Moreover, what Vitasafe may not do directly, it may not do through corporate sleight of hand. Any products sent by Vitasafe's alter-ego corporations to Vitasafe customers will be equally mislabeled by that company's pre-decree advertising, despite the fact that the name of the corporation on the bottom of the vitamin bottle may have been changed. It would be an empty gesture in this case to enjoin one and to allow the others to continue to perpetrate the prohibited acts. The closely related companies and individuals named in the complaint are therefore properly joined in this portion of the injunction.

Defendants suggest that this provision means "a company can be completely destroyed if at any time it is held there was a false or misleading statement in its advertising." Not so. It is only under the circumstances of this case, where the condemned labeling was the core and substance of past business, that complete abstinence alone can provide a cure. The mere discontinuation of circulation can achieve at best an attenuation of the effects of the mislabeling. Under other conditions a far less drastic remedy might well be appropriate.

It must be emphasized that the purpose of this provision of the injunction is not to force the defendant corporations out of business. It does not "close down" the companies, but requires that they use properly labeled products. Its aim is the protection of the public, which has the right to be free not only from the condemned material itself, but the extended effects of the period of mislabeling.

The motion for relief from paragraphs B(a) and B(b) is denied. A preliminary injunction will issue identical to the temporary restraining order except that paragraph A(a) and references thereto will be deleted.