UNITED STATES of America
v.
An Undetermined Number of Shipping Packages, Etc., VITASAFE COR-PORATION, Appellant.

UNITED STATES of America
v.
VITASAFE CORPORATION, a Corporation, Nutritional Quality Controls, Inc., a Corporation, the Dollar Vitamine Plan, Inc., a Corporation, Life Nutrition, Inc., a Corporation, International Oil and Metals Corporation, a Corporation, Dr. Parker Medicine Company, a Corporation, Philip S. Volosov, an Individual and Henry D. Cohen, an Individual, Appellants.

Nos. 14964, 15066.

United States Court of Appeals
Third Circuit.

Argued Oct. 19, 1964.

Decided May 27, 1965.

Milton A. Bass, Bass & Friend, New York City, for appellants.

Vincent J. Commisa, Asst. U. S. Atty., Newark, N. J., for appellees.

Dilling & Dilling, Chicago, Ill., on the brief, for amicus curiae.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

The District Court, in an *in rem* proceeding under the Federal Food, Drug

and Cosmetic Act[1] (Appeal No. 14964), condemned and forfeited (1) some 900 seized packages of Vitasafe vitamin-mineral capsules, which it found to be "foods"[2] and "drugs"[3] introduced into interstate commerce, with "labeling" claims that were false and misleading, and with inadequate directions for their use;[4] and (2), approximately 3,730,000 pieces of written, printed and graphic material designed to promote the sale of the capsules, seized in the warehouse of the Vitasafe Corporation in Middlesex, New Jersey, which were held to be "labeling".[5]

The District Court, in a subsequent injunction proceeding (Appeal No. 15066), granted a Preliminary Injunction imposing restrictions on the defendants named therein with respect to the distribution of their products, their "labeling," and accompanying literature.

The critical issues presented by this consolidated appeal from the Condemnation Decree and Preliminary Injunction are:

(1) Were the District Court's fact-findings that the condemned capsules were misbranded "clearly erreoneous."

(2) Did the District Court err in ruling that the 3,730,000 pieces of promotional literature seized in the warehouse of Vitasafe Corporation constituted "labeling".

(3) Did the District Court, in its Preliminary Injunction, abuse its legal discretion in imposing challenged restraints on the defendants' sale and distribution of its vitamin-mineral capsules.

The record discloses that the Vitasafe Corporation carried on a mail-order business for the sale of a vitamin-mineral dietary supplement. It purchased large quantities of vitamins from various manufacturers, and repackaged them under its own label at its headquarters in Middlesex, New Jersey. It thereafter sold to persons who responded to its advertising and promotional literature which appeared in magazines, newspapers and Sunday supplements throughout the United States. It also made sales to persons to whom it had mailed its promotional literature. It did not retain a record of persons to whom the literature was sent.

The Libel of Information alleged that the "labeling" which accompanied the Vitasafe product, a series of ten different pieces of promotional literature, falsely implied and suggested (1) that Vitasafe "Formula M" and Vitasafe "Formula W" were designed to satisfy the special nutritional needs of men and women respectively; (2) that the nutritional value of the Vitasafe capsule was enhanced by the addition of several ingredients which were in fact of "no nutritional significance for dietary supplementation;" (3) that the minimum adult daily requirements of vitamins and minerals, specified in the "labeling", were the recommendations of the Food and Nutrition Board, National Academy of Science, National Research Council and (4) that large amounts of common foods would be needed to provide the nutrients supplied by one Vitasafe capsule.

1. 21 U.S.C.A. § 334,

2. "Food" within the meaning of 21 U.S.C.A. § 321(f).

3. "Drug" within the meaning of 21 U.S.C.A. § 321(g).

4. In contravention of 21 U.S.C.A. § 343 (a) and § 352.
Section 343(a) provides:
"A food shall be deemed to be misbranded—
   "(a) If its labeling is false or misleading in any particular."
Section 352 provides in relevant part:

"A drug or device shall be deemed to be misbranded—
   "(a) If its labeling is false and misleading in any particular.
   *      *      *      *      *
   "(f) Unless its labeling bears (1) adequate directions for use * * *."

5. 21 U.S.C.A. § 321(m) provides:
"The term 'labeling' means all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article."

The Libel also alleged that the "labeling" falsely and misleadingly implied and suggested that Vitasafe, as a drug, was an adequate and effective treatment for several common maladies.; that practically everyone in the country was suffering from, or in danger of suffering from, a dietary deficiency of vitamins, minerals and proteins, which was likely to cause certain deficiency diseases; and that the deficiencies suggested were caused by a loss of nutritive value due to the soil in which food was grown, and the storage, processing and cooking of foods.

The Libel further alleged that the "labeling" represented Vitasafe to be "a lipotropic factor or agent" without adequately stating directions for its use as such.

The Government, in condemnation proceeding, presented several expert witnesses in support of its position. Vitasafe Corporation, as claimant, also presented expert witnesses.

The District Court, 226 F.Supp. 266 (D.N.J.1964) found that Vitasafe was a "food" within the meaning of 21 U.S.C.A. § 321(f) because its "labeling" recommended "its use and represent[ed] it to be of value as a dietary and nutritional supplement;" that it was also a "drug" within the meaning of 21 U.S.C.A. § 321(g) because its "labeling" recommended "its use and represent[ed] it to be of value as a curative or preventive of disease conditions in man affecting the structure and function of the body of man". It further found that the seized packages of Vitasafe were "misbranded when introduced into, while in, and while held for sale after shipment in inter-state commerce," in that their "labeling" was false and misleading,[6] and that there did not appear adequate directions for the use of Vitasafe as a lipotropic factor or agent.[7]

The District Court on the basis of the stated fact-findings, held that the seized 900 packages of Vitasafe capsules were subject to condemnation as "misbranded", under 21 U.S.C.A. § 334, and so ordered. The record amply supports both the fact-findings and the order of condemnation with respect to these seized packages. It would serve no useful purpose to dwell on this aspect of this appeal in view of the exhaustive analysis relating to these packages in the District Court's opinion.

We are, however, of the opinion that the District Court erred as a matter of law in ruling that the 3,730,000 pieces of promotional literature seized while at rest in the Vitasafe warehouse in Middlesex, New Jersey, were "labeling" within the meaning of 21 U.S.C.A. § 321(m), and as such subject to condemnation under 21 U.S.C.A. § 334.

The Government urges with respect to these 3,730,000 pieces that "all of the promotional matter seized was obviously intended to promote Vitasafe, and had no other useful purpose," and that "it supplements the label on the bottle of capsules, and was intended by the claimants to be ultimately used in the sale of Vitasafe," and thus it was "labeling" subject to condemnation under the Act.

The claimant, Vitasafe Corporation, does not deny the alleged intended use of the seized material, but contends that

---

**6.** Although the District Court found the "labeling" to be false and misleading in almost every particular asserted by the Goverment it failed to find, without indicating its reason, that the "labeling" suggested that practically everyone in this country was suffering from, or in danger of suffering, dietary deficiencies which were likely to be the cause of a number of diseases, and that such deficiencies were caused by the soil in which food was grown and the storage, processing and cooking of foods; or that such suggestions were false and misleading.

**7.** The District Court found that lipotropic factors "are substances which affect the mobilization of fat, particularly in the liver", and that "Nowhere in the labeling does there appear the conditions for which the Vitasafe capsule is to be used as a lipotropic factor or the collateral measures necessary for the safe use of Vitasafe by a layman as a lipotropic factor." 226 F.Supp. at page 278 (Para. 6, Findings of Fact).

it was never actually employed for such purposes, and therefore could not have been subject to condemnation under the Act.

Under Section 321(m) the term "labeling" applies inter alia to "written, printed, or graphic matter" which appears upon any article or any of its containers or wrappers or *"accompanying such article."* (emphasis supplied)

Section 331, 21 U.S.C.A. which prohibits, in subsection (a) "The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded", also proscribes in subsection (1) the use of "any advertising" matter thus used relating to the misbranded article. Section 334 provides for the seizure and condemnation of "labeling" as defined in Section 321(m).

Section 334(a) specifically provides that misbranded articles of food or drugs, "when introduced into or while in interstate commerce or while held for sale * * * after shipment in interstate commerce", may be condemned.

Critical here is the second clause "accompanying such article" in Section 321(m).

■ The 3,730,000 pieces of literature seized while in the Vitasafe warehouse cannot be categorized as "labeling" within the meaning of Section 321(m) since they perforce cannot be held to have been "accompanying" any misbranded Vitasafe capsules "introduced into or while in interstate commerce or while held for sale * * * after shipment in interstate commerce" inasmuch as they never entered interstate commerce.

The cases cited by the Government in support of its contention that the 3,730,000 pieces of literature constituted "labeling" are inapposite.

In Kordel v. United States, 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52 (1948), "The alleged misbranding consists of statement in circulars or pamphlets *distributed* to consumers by the vendors of the products * * *." Here there

was never any "distribution" of the seized literature. (emphasis supplied)

In United States v. Urbuteit, 335 U.S. 355, 69 S.Ct. 112, 93 L.Ed. 61 (1948), certain machines misbranded as possessing "curative and therapeutic powers" were seized *after shipment in interstate commerce.* The claimant "admitted that the devices and leaflets [extolling the alleged virtues of the devices], *had been shipped in interstate commerce,* but denied that they were shipped together or that they were related to each other." (emphasis supplied)

In holding that the leaflets constituted "labeling" the Court said (pp. 357–358, 69 S.Ct. p. 114):

"In this case it is plain to us that *the movements of machines and leaflets in interstate commerce* were a single interrelated activity, not separate or isolated ones. * * * The fact that the false literature *leaves in a separate mail* does not save the article from being misbranded. Where by functional standards the two transactions are integrated, the requirements of § 304(a) are satisfied, though the *mailings or shipments* are at different times." (emphasis supplied)

Again, here both the machines and leaflets were introduced into interstate commerce.

In United States v. 47 Bottles etc. Jenasol, 2 Cir., 320 F.2d 564 (1963) cert. den. sub nom. Schere d/b/a Jenasol Company v. United States, 375 U.S. 953, 84 S.Ct. 444, 11 L.Ed.2d 313, where we affirmed the condemnation of promotional literature, the latter had been *shipped in interstate commerce*—from New York to the State of Washington—to a distributor in whose home it had been found. The literature had been separately shipped to the distributor to promote the sale of a drug found to be misbranded.

Again, in United States v. Hohensee, 3 Cir., 243 F.2d 367 (1957), cert. den. 353 U.S. 976, 77 S.Ct. 1058, 1 L.Ed.2d 1136, where we affirmed the judgments of con-

viction for introduction of misbranded drugs into interstate commerce, the promotional materials and misbranded drugs had been *transported in interstate commerce.* Likewise, in United States v. 353 Cases * * * Mountain Valley Mineral Water, 247 F.2d 473 (8 Cir. 1957) the condemned literature, which extolled the medicinal and therapeutic qualities of a misbranded mineral water, had been *shipped,* along with the water, in *interstate commerce* from Hot Springs, Arkansas to Memphis, Tennessee, where both were seized.

We come now to the challenged sweep of the District Court's Preliminary Injunction at Appeal No. 15066.

The defendants in the injunction proceeding concede that if the District Court correctly held that the Vitasafe capsules were misbranded that it could enjoin its continuance. They contend, however, that the Injunction as issued is too broad in that, they say, (1) it enjoins sales of the capsules "even with proper labeling, to anyone who previously received any of the appellants' advertising literature and to any former customer", and (2) it prohibits the distribution of literature "which contains certain specified statements and representations and then adds a clause 'or which is otherwise false and misleading' ".

In support of their first contention, appellants urge that "the Federal Food, Drug and Cosmetic Act does not authorize an injunction to prohibit shipment of a product, with proper labeling, on the ground that prior literature contained a false or misleading statement or misrepresentation"; that such a prohibition "is punitive in nature rather than remedial"; and that "it is unjust in that it will cause substantial, if not, total destruction of a company for any past false or misleading statement in its advertising."

In reply, the Government says, in substance, that the Preliminary Injunction, only restrains sales to "present customers" and that "There is no doubt that appellants can now market their product under appropriate labeling, to all the world—except those persons who have already been subjected to the false and misleading claims made by appellants."

The challenged provisions of the Preliminary Injunction enjoin the appellants from

"B. Introducing and causing to be introduced and delivering and causing to be delivered for introduction into interstate commerce any of the aforesaid articles which are addressed

"(a) to any person to whom the defendants have previously sent, prior to the date of this decree, any written, printed, and graphic matter which makes any of the statements or representations set forth in paragraph A(a), or

"(b) to any person who has sent to the defendants any of the order forms or order blanks which have been mailed by defendants prior to the date of this decree or which have appeared in any newspaper, magazine, Sunday supplement, or other advertisement published prior to the date of this decree;"

The Injunction here was issued pursuant to Section 332(a) of the Federal Food, Drug and Cosmetic Act, 21 U.S. C.A. § 301 et seq., which provides in relevant part:

"The district courts of the United States * * * shall have jurisdiction, for cause shown * * * to restrain violations of section 331 * * *."

Section 331 provides:

"The following acts and the causing thereof are prohibited:

"(a) The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded.

"(b) The adulteration or misbranding of any food, drug, device, or cosmetic in interstate commerce."

A food or drug is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C.A. §§ 343(a), 352 (a).

It is settled that the "high purpose" of the Act is "to protect consumers who under present conditions are largely unable to protect themselves in this field," [8] and that the problem of its· enforcement "is a practical one of consumer protection, not dialectics." [9]

In the leading case of United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48, the late Mr. Justice Frankfurter, speaking for the Court, laid down these guidelines with respect to the Act's construction and application, at page 280, 64 S.Ct. at page 136:

> "The purposes of this legislation thus touch phases of the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self-protection. Regard for these purposes should infuse construction of the legislation if it is to be treated as a working instrument of government and not merely as a collection of English words."

In the instant case, the District Court, in its opinion reported at 235 F.Supp. 84 (D.N.J.1964), specified the respects in which the "labeling" of the condemned capsules misbranded them and the record amply supports the specifications.

After so doing the Court said (pp. 88, 89):

> "Present consumers of Vitasafe products became customers as subjects of the condemned ads. Any vitamins sold by Vitasafe to such customers now are as much mislabeled by that advertising as if they had been sold before the condemnation decree. The discontinued circulars remain labeling for Vitasafe products in the minds of those previously subjected to it. * * *

> "The condemned labeling was the substance of a long and concerted campaign by Vitasafe. It is fairly inferable from the facts that the vast majority of pre-decree customers were enticed into the Vitasafe net by false and misleading labeling. Furthermore, the literature which Vitasafe and its associate companies have used of late in connection with both old and new customers, innocuous though some of it may be, tends to reinforce, by similarity in content and form, the effect of the earlier mislabeling.

> "It is therefore our opinion that the condemned advertising mislabeled all Vitasafe products which were or will be sent to customers obtained prior to the decree. It is necessary and proper, in order to prevent further distribution of mislabeled vitamins, to restrain and enjoin defendant Vitasafe's continued distribution to these customers."

It is clear from the foregoing that the District Court contemplated only enjoining sales of the capsules to those persons who had been subjected to, and inveigled by, the false and misleading claims made by the appellants in their directly mailed literature, and newspaper and magazine advertisements.

Under the facts in the instant case, and the applicable law, imposition of the restraints contemplated by the District Court would be well within permissible limits since a court may reasonably conclude that post-injunction sales of an article may be the end product of prior misbranding, and enjoin such sales.

However, the Preliminary Injunction, in Paragraph B, subsection (a) enjoins sale of the capsules "to any person to whom the defendants have previously sent, prior to the date of this decree, any written * * * matter" making specified false claims, irrespective of whether the sale is the end product of such "written matter", or the result of solicitation by proper post-decree literature.

That being so, we are compelled to the opinion that subsection (a) of Paragraph B of the Preliminary Injunc-

8. Kordel v. United States, 335 U.S. 345, 349, 69 S.Ct. 106, 109 (1948).

9. United States v. Urbuteit, 335 U.S. 355, 358, 69 S.Ct. 112, 114 (1948).

tion is beyond permissible limits and must therefore be vacated.

The restraints contemplated by the District Court may be satisfactorily achieved and made effective by adding the italicized clause "or will send" to subsection (b) of Paragraph B so that it will read as follows:

"(b) to any person who has sent, *or will send,* to the defendants any of the order forms or order blanks which have been mailed by defendants prior to the date of this decree or which have appeared in any newspaper, magazine, Sunday supplement, or other advertisement published prior to the date of this decree;"

There remains for disposition the defendants' contention that the injunction is too broad in that, in Paragraphs A and C, it prohibits the distribution of literature which contains certain specified statements and misrepresentations, "or which is otherwise false and misleading". The defendants urge that the clause "otherwise false and misleading" enjoins acts which are neither "identifiable" nor "specific", and further fails to make "knowledge of falsity" a condition.

We are of the opinion that the defendants' contentions in this respect are valid, and that accordingly, the clause "or which is otherwise false and misleading" must be deleted from Paragraphs A and C of the injunction.

Rule 65(d), F.R.Civ.P. requires that "[e]very order granting an injunction * * * shall be specific in terms * *." The challenged clause lacks the required specificity. It places the defendants "at the peril of a summons for contempt"

without providing any guidelines for the carrying on of a future advertising program in a manner deemed appropriate by the District Court. Cf. National Labor Relations Board v. Express Publishing Co., 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930 (1941).

In closing, it must be noted that the District Court, in Paragraph A(a) (6) enjoined the defendants from shipping their product in interstate commerce when accompanied by "labeling" representing,

"that practically everyone in this country is suffering from or is in danger of suffering from, a dietary deficiency of vitamins, minerals and proteins, which is likely to result in specific deficiency diseases such as scurvy as well as a great number of nonspecific symptoms and conditions, and that such threatened deficiency is due to loss of nutritive value of ordinary foods by reason of the soil on which the foods are grown, and the storage, processing and cooking of the foods,"

without a fact-finding that any such representations had been made in the past, or that they were false and misleading. It is apparent that the failure to make such a fact-finding was inadvertent since its basis is amply established by the record.

For the reasons stated the causes at Appeal No. 14964 and at Appeal No. 15066 will be remanded with directions to the District Court to vacate its Decrees respectively entered therein on April 13, 1964 and September 29, 1964, and to enter new Decrees in accordance with the Opinion of this Court.