**UNITED STATES of America, Plaintiff,**

v.

**VARIOUS ARTICLES OF DEVICE, Defendant.**

**Civ. No. 66–1184.**

United States District Court
S. D. California,
Central Division.
Aug. 10, 1966.

Manuel L. Real, U. S. Atty., Frederick
M. Brosio, Jr., Larry L. Dier, Asst. U.
S. Attys., Los Angeles, Cal., for plaintiff.

Klinger & Leevan, Tobias G. Klinger,
Los Angeles, Cal., for defendant.

## MEMORANDUM OF DECISION AND ORDER

GRAY, District Judge.

On July 20, 1966, the Government of
the United States filed a complaint for
forfeiture, pursuant to the Federal Food,
Drug & Cosmetic Act, 21 U.S.C. Section
301 et seq. The complaint was directed
against about three hundred articles of
device whose general function was to
vibrate in a manner that presumably
would provide muscle-relaxing therapy
when brought into contact with the
human body. Some of these devices were
in the form of lounging chairs; others
were adaptable for use in bed or in an
automobile; and some were hand models.
All of the devices were alleged to have
been shipped in interstate commerce to
Los Angeles between the dates of March
24 and May 18, 1966 and thereafter to
have been held for sale by the Niagara
Therapy Manufacturing Corporation
("Niagara"). The complaint further
alleged that on June 7, 1966, a sales rep-
resentative of Niagara orally asserted
to a certain man and wife, in their home,
that these articles of device would " * *
relax the most spastic muscles in a

period of six to 40 minutes; dilate the
blood vessels and capillaries; allow the
blood to flow more freely to carry away
waste; relax muscles; prevent muscle
cramps from coming in the night; poor
circulation; lower back trouble; migraine
headache; varicose veins; arthritis; to
keep arthritis from spreading to other
portions of the body; limber up hands;
bursitis; therapy for the nervous system,
muscles, and circulatory system; take
pressure off the heart; tension; hyper-
tension; ulcers; cramps; pinched nerve
in the back; anything that you would
need therapy for; gas pockets that form
in the colon; stroke; low blood pressure;
heart trouble; diabetes; constipation;
hardening of the arteries; multiple scler-
osis; and polio; and that use of the de-
vices will increase circulation; and tone
and strengthen the muscles; * * *."

Inasmuch as the labeling on the devices
failed to bear adequate directions for
use in order to accomplish all of these
things, the Government contended in its
complaint that all of the articles therein
listed were "misbranded", in violation
of 21 U.S.C. Section 352(f) (1) and
therefore were liable to seizure by process
pursuant to libel for condemnation under
21 U.S.C. Section 334.

Armed with such process, the United
States Marshal went to the premises of
Niagara on July 22, 1966 and seized not
only the named articles but virtually all
of the rest of the inventory, as well.
Niagara promptly moved to vacate the
attachment with respect to the articles
not described in the complaint, contend-
ing that some of the articles that should
be so released had completed their inter-
state journey before March 24, others
arrived after May 18, and the balance
never were in interstate commerce,
having been manufactured right here in
Los Angeles.

Hearing on Niagara's motion was set
for Monday, August 8, 1966. On the pre-
ceding Friday, the Government filed an
amended complaint, which was the same
as its original pleading in all respects,
except that it itemized the articles of
device that the Marshal had seized on

July 22, and alleged that they had been shipped in interstate commerce "on various dates prior to July 20, 1966" (the date the original complaint was filed). The Government simultaneously filed a memorandum which asserted that since the amended complaint, by reason of the relation back provision of F.R.Civ.P. Rule 15(c), made lawful the original seizure of all of the items, the motion to vacate should be denied.

The present state of affairs is that virtually the entire stock in trade of Niagara has been seized and is threatened with condemnation because of a purported single oral sales "pitch" by one salesman. There is no showing that the capabilities attributed to the device by the salesman are in any manner supported by promotional literature published or distributed by Niagara, nor is there any contention by the Government that Niagara in any manner encouraged, approved, or even knew of the claims that the salesman made concerning the devices, as related in the complaint. Insofar as we are informed by the Government's pleading, the salesman's remarks complained of may have stemmed from a flight of fancy of his own and were limited to the single occasion that the complaint describes.

Can a single instance of misrepresentation of the type here concerned cause to be "misbranded" and made subject to seizure all of the inventory of articles that Niagara received in interstate commerce and had on hand at the time of the misrepresentation, as well as all of the similar articles that Niagara might thereafter receive from time to time?

21 U.S.C. Section 352 provides that "A drug or device shall be deemed to be misbranded— * * * (f) Unless its labeling bears (1) adequate directions for use; * * *." Regulations issued by the Food and Drug Administration of the Department of Health, Education and Welfare define "adequate directions for use" to include:

"* * * Statements of all conditions, purposes, or uses for which said drug or device is intended, including conditions, purposes, or uses for which it is prescribed, recommended, or suggested in its oral, written, printed, or graphic advertising, and conditions, purposes, or uses for which the drug or device is commonly used; * * *."
21 C.F.R. Section 1.106(a) (1) (1966)

Under the above mentioned law and regulations, drugs and devices have been held to be misbranded when their labeling failed to contain directions as to how they were to be used in order to bring about the benefits attributed to their powers by promotional literature. Irons v. United States, 244 F.2d 34 (1st Cir. 1957). Similar results have stemmed from representations made in public lectures. Nature Food Centres, Inc. v. United States, 310 F.2d 67 (1st Cir. 1962)

However, in every case that has been found to be pertinent to the problem here concerned, the whole course of conduct involving written and oral representations has been of a magnitude far exceeding that alleged here. No case has been discovered, and none have been offered for this Court's consideration, that is even comparable to a situation in which statements orally made by a salesman in a private home on only one occasion are alleged to warrant seizure of the products that he was promoting.

It seems to me, however, that in considering the problem here concerned a helpful analogy may be found in the cases involving prosecutions for mail fraud. As might be expected, there are many cases in which a defendant, in appealing a conviction of using the mails to defraud, has complained that evidence of false representations by his employees or salesmen was improperly admitted against him. In several of these cases, the conviction was upheld, but in each such instance the appellate court was careful to point out that the evidence as a whole disclosed that the defendant at least had full knowledge concerning the activities of the salesmen.

For example, in Whitehead v. United States, 245 F. 385 (5th Cir. 1917), the

trial court had admitted into evidence testimony by more than one hundred prospective purchasers as to what the defendant company's agents had said to them. The Court of Appeals affirmed the conviction, the opinion pointing out (at page 396) that

"If there had been evidence of a single transaction only, or of isolated and occasional transactions, the contention might have appeared meritorious. But the accumulated evidence * * * clearly indicates an established course of business, an important feature of which was systematic misrepresentations by agents. It is apparent that the agents were expected to follow up the misleading advertising and misleading contract by suppression of the facts that should have been disclosed, and misrepresentations as to terms and effect of the contract."

Similarly, in Osborne v. United States, 17 F.2d 246 (9th Cir. 1927), a large number of purchasers had been permitted to testify as to representations and statements made to them by salesmen. Objection had been made by the appellants on the ground that such statements had not been authorized by them. In rejecting this contention, the opinion of the Court of Appeals stated:

"If this testimony related to but a single transaction, there would be merit in the objection, but, when we consider the fact that the plaintiffs in error maintained a school for the instruction of salesmen, and issued bulletins and circulars for their guidance, * * * we think the jury were warranted in finding that the statements and representations complained of were so made pursuant to a general plan or scheme adopted and sanctioned by the plaintiffs in error." (Page 249)

See also Beck v. United States, 305 F. 2d 595, 601 (10th Cir. 1962).

On the other hand, in Beck v. United States, 33 F.2d 107 (8th Cir. 1929), a conviction in the trial court was reversed because evidence had been admitted concerning conversations between many contract holders and a number of salesmen employed by the company of which the defendant was President, but which conversations had been held out of the presence of the defendant and were not shown to have been authorized by him. In the course of its opinion, the Court of Appeals stated that

"It must be true that no man can be held liable for a false pretense or promise if he neither made the pretense nor authorized it. It is doubtful as to whether the corporation could be held civilly for unauthorized and unratified promises of a salesman; it is more doubtful whether the president could be personally held; * * *." (Page 112)

The principles set forth in the hereinabove discussed cases involving mail fraud are equally valid here. It is accordingly my conclusion that the representations made by the salesman on the single occasion recited in the complaint are not shown to be chargeable to Niagara and therefore did not cause any of its articles to be misbranded in violation of the Food, Drug & Cosmetic Act. It follows that the complaint failed to state adequate grounds for the seizure of the articles, and that they must all be returned to Niagara.

This conclusion and resulting order are without prejudice to the right of the Government to renew its attachment whenever it can allege and establish that the representations of the salesman set forth in the complaint were part of a course of conduct instituted, participated in, or permitted by Niagara or its responsible management.

The determination that I have made as to the manner in which this matter must be resolved removes the need to give further consideration to other problems that otherwise would be somewhat troublesome: (a) Whether the seizure by the Marshal of many more of Niagara's devices than were listed in the original complaint, was fully cured by the filing of the amended complaint which did refer to all such devices; (b) the significance, if any, of the fact that the com-

plaint makes no allegation concerning what the salesman purportedly claimed for the devices with respect to many of the diseases listed in the complaint, such as bursitis, ulcers, diabetes, and so forth; (c) whether only the devices that were on hand on the day the salesman made his oral presentation were thereby rendered subject to seizure, or whether later received articles became similarly infected, as contended by the Government, and, if so, for how long short of perpetuity.

It is ordered that the attachment by means of which the articles referred to in the complaint and amended complaint were seized is hereby released in its entirety, and the United States Marshal is directed to return all of such articles forthwith to Niagara at the place from which they were taken.

It is further ordered that the Clerk of this Court immediately notify the attorneys for the parties and the United States Marshal of this order, and that copies of this order thereupon be mailed to them.