**ALBERTY FOOD PRODUCTS CO. v. UNITED STATES.**

No. 12483.

United States Court of Appeals Ninth Circuit.

Nov. 20, 1950.

322

George H. Hauerken, Cyril Viadro, and Hauerken & St. Clair, all of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., Edgar R. Bonsall, Asst. U. S. Atty., San Francisco, Cal., (Arthur A. Dickerman, Atty., U. S. Food & Drug Adm., Washington, D. C., of counsel), for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

Appellee filed a libel under which it seized appellant's drug here involved (33 bottles of Ri-Co Tablets) charging therein that the drug was "misbranded" in violation of 21 U.S.C.A. § 352(f)(1) of the Federal Food, Drug, and Cosmetic Act, referred to hereafter as the Act. The specific ground of complaint was that the "labeling" of the drug failed to bear adequate directions for use since it did not state the purpose or condition for which the drug was intended. The only directions for use on the label attached to the bottle read as follows: "Three tablets with a cupful of hot water. Take four times daily. Before meals and on going to bed."

. At the hearing below two newspaper advertisements from daily publications in large cities were introduced. These ads show that appellant's drug was there represented and recommended by appellant for use in the treatment, mitigation, and cure of arthritis and rheumatism. The two advertisements read as follows:

"Rocky Mountain News Tuesday, Oct. 1, 1946

"Arthritis
Rheumatism
Rico Tablets
Another Alberty
Product
"Do you suffer from Arthritis or Rheumatism, two of the most painful ailments that afflict mankind?

"These ailments arise from the same underlying cause—two much acidity that permits deposits of urates in joints or muscles that cause excruciating pain.

"Science has spent many years searching for remedies for these ailments. If you have tried many remedies without relief Try Rico, a formula discovered by a famous Homeopathic physician for relief of the pains of Arthritis and Rheumatism. For over 15 years this formula has been used by many eminent Homeopathic Physicians.

"Rico is harmless and does not upset the digestive tract or affect the heart.
"275 Tablets ................... $2.00
"In Colorado, include 2% state sales tax
"Sent Postpaid When Remittance Accompanies Order.
"Leeds Health House
"Under new ownership:
    Ethel Barnes and Helen Olson
"725 15th St.                    KE. 9214
"2 Doors from Denver Dry Goods."
"San Francisco Chronicle Monday, June 7, 1948 Page 13

"Troubled with
Symptoms of
Arthritis
Rheumatism?
Alberty's
Rico Tablets
"Why Suffer From The Pains Of The Symptoms Of Arthritis And Rheumatism When Rico May Give You Amazing Palliative Relief Like It Has Done For Countless Others?

"Some 25 years ago a famous Homeopathic Physician attacked this problem from the homeopathic point of view. He combined certain ingredients according to the theories of homeopathy for relieving certain symptoms of arthritis and rheuma-

tism. This formula has stood the test of time and it has been widely used by many Homeopathic Physicians.

### "Alberty's Rico Tablets

"Rico is made by the same formula originated by the famous Homeopathic Physician. And, according to the principles of Homeopathy, improves the symptoms of muscular or ligamentous pain and stiffness due to Arthritis or Rheumatism except when accompanied by a febrile condition. They are not a Sedative; do not upset the Digestive Tract Or Affect The Heart.

"Try Rico today——
"an Alberty Product
"$1.00, Two Weeks' Supply.
"Economy Size, $2.00
"San Francisco
"Health Foods
　Store
"415 Sutter St.　　　　Ex. 2-8477"

Appellant appeared as claimant of the drug and filed exceptions to the libel. In essence the exceptions were that the Act does not require the labeling of a drug to state the disease condition for which it is to be used. In this connection it contended that the misbranding here charged was merely a failure to include upon the label of the container information to consumers which was not required by the Act to be included thereon either as directions for its use or otherwise. As a consequence the libel failed to state a cause of action because the alleged misbranding was not a misbranding at all. Appellant's exceptions were overruled by the trial court. Appellant's subsequent answer to the libel ad-

mitted that the seized Ri-Co Tablets were a drug that had been shipped in interstate commerce.

After the answer, appellee filed a motion for summary judgment which asserted (1) there were no facts in dispute and (2) the only legal issue had been decided in favor of appellee when the lower court overruled claimant's exceptions to the libel. It supported this motion by (1) an affidavit of a food and drug representative incorporating photostats of the complete labeling on the drug container and the two newspaper advertisements above noted, and (2) the affidavits of four physicians (licensed to practice in California) attesting to the complete worthlessness of Ri-Co Tablets in the treatment or cure of arthritis or rheumatism or their symptoms.[1]

Appellant filed no counter-affidavits, and after hearing the court granted appellee's motion for summary judgment, made and entered Findings and Conclusions and a Decree pursuant thereto. The Decree condemned the drug, ordered it destroyed[2] and awarded certain costs to appellee. The appeal is from this Decree.[3]

In urging reversal appellant presents five claims of error committed by the lower court and it simplifies the problem in this case by stating that these errors relate to only two basic issues. Claims 4 and 5 *both* relate to the procedural question of whether a summary judgment was proper in this case. Claims of error, 1, 2 and 3 *all* relate to the question of whether or not the Act requires that the directions (on the bottles) for the *use* of the tablets include a state-

1. Despite the physicians' affidavits the lower court refused to consider the question of the therapeutic qualities of the drug. It held that the misbranding charge in the libel was sustained, and this ruling presents the controlling issue on this appeal.

2. Pursuant to the decree the drug in question was destroyed by the United States Marshal. Because the Ri-Co Tablets are no longer in existence appellee's brief suggested absence of jurisdiction to entertain this appeal, but on argument appellee advised the court that it was not urging this point and we disregard it. In

this connection we note that appellant did not seek a stay of the order of destruction.

3. In its findings the court sets forth that appellant had proposed to consent to a decree of condemnation provided permission was given to *relabel* the drug so as to conform with certain language in a Federal Trade Commission Order. In the exercise of its discretion, under Sec. 334 (d) of the Act, the court denied this privilege. Appellant states that it does not question that ruling on this appeal and it is not in issue here.

ment of the conditions for which the tablets are used.

In appellant's argument on the issues as thus narrowed, it says:

"With the *exception* therefore of the procedural issues of whether a summary judgment can be granted in a condemnation proceeding and whether a summary judgment should have been granted in this proceeding, *the only issue* before this court is the issue of whether the Act requires that the directions for the use of the tablets include a statement of the conditions for which they are used.

\* \* \* \* \* \*

"*The directions printed on the label* of Ri-Co. Tablets are adequate *for their use* in all conditions for which they are prescribed, recommended, suggested, or commonly and effectively used. The Act does not require a label to include *a statement of those conditions* and the decree should accordingly be reversed with instructions to dismiss the libel. In the alternative, the decree should be reversed, and the question of whether the directions are adequate for the intelligent and effective use of the tablets should be left to the determination of a jury." (Emphasis supplied.) (As later appears this reference in the last sentence refers to the propriety of the summary judgment in this case.)

As respects the legal sufficiency of the label appearing on its bottle appellant clarifies its position by the further argument: "The Government \* \* \* contends that no information could be more essential to the consumer regarding a drug which he can purchase without prescription than a statement of the conditions for which the drug is used. We agree that no one is likely to purchase a drug without knowing the conditions for which the drug is used. That knowledge, however, *must* be imparted to the consumer by means other that the label. He must have it before he gets close enough to the label to be able to read its fine print. In other words, he will not buy the drug unless he learns of the conditions for which it is used *from sources outside the label,* as by prescription, recommendation, suggestion, or common and effective

usage. By the time he sees the label, he needs only to be protected by being told how to use the drug for the condition for which he is purchasing it. If '4 times daily' is an adequate direction for the use of the drug in that condition, the label complies with the Act irrespective of whether it refers to that condition." (Emphasis supplied.)

The foregoing argument conclusively shows that appellant relied exclusively upon these "outside sources," namely, the newspaper advertisements, to provide *all* of the information which could possibly enlighten prospective purchasers of its drug concerning "the conditions" for which the drug was to be used by them.

Appellant also offers some reasons for its failure to include on the bottle label nothing more than the dosage recommended. In substance it argues that: a statement of *all* conditions or symptoms for which the drug is used would be so long that it could not be included within the limits of the label. While it is true that Sec. 352(f)(1) requires "directions for use" on the labeling, and Sec. 321(m) defines "labeling" as including the "label" on the immediate container *and* all other "accompanying" literature, still this use of the more inclusive term "labeling" is nullified by Sec. 352(c) which deems a drug misbranded unless *all* information required to appear on the labeling be placed thereon in such manner as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

The arguments in the preceding paragraph lack persuasiveness and merit.

### The Basic Issue

Two recent cases present a material bearing on the issue before us. Kordel v. United States, 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52, and United States v. Urbuteit, 335 U.S. 355, 69 S.Ct. 112, 93 L.Ed. 61. The Kordel case involved the shipment and sale of a drug—a charge of misbranding was made because of certain representations in "accompanying" leaflets, circulars and pamphlets supplied by Kordel, and distributed by his vendors to consumers and

users. These "accompanying" documents contained statements relative to the use and efficacy of the drugs. As we understand the doctrine announced in these cases it is that where *literature of the character above indicated* is shipped in interstate commerce *and distributed to consumers as part of an integrated distribution program,* the literature *which thus accompanies the drug and is distributed with it,* constitutes an essential supplement to the label attached to the package containing the drug although this literature may have been shipped separately and at a different time than the drug. This process made the product and the literature "interdependent" so far as "labeling" is concerned. In short, the supplemental literature was considered a part of the label on the drug container.

In the case at bar we face a different set of facts. Appellant did not resort to the distribution of any sort of "literature" to ultimate purchasers as a "supplement" to its package label. Neither did it distribute such "literature" to purchasers, actual or prospective, to promote sales and to describe and advertise the therapeutic qualities of its durg. Appellant used only the newspaper advertisements and we think that it cannot be said that these advertisements "accompanied" appellant's drug into interstate commerce, and were "distributed" by vendors, or otherwise, to ultimate purchasers of the drug as part of an "integrated distribution program." On the "labeling" issue, this distinction should be borne in mind.

■ What we have already said leads us to disagree with appellant's contention that by employing these "remote" newspaper advertisements it fully supplied a legally adequate "labeling" which described the *use* of the drug in the treatment or alleviation of arthritic or rheumatic conditions. It seems to us that supporting appellant's views would be a long and drastic step toward nullifying what we regard as salutary protective features of the act which Congress designed to control and regulate the sale of drugs to a helpless public—helpless because it is uninformed. (See comment on this phase of the law in United States v. Various Quantities—Instant Alberty Food, D. C. Cir., 83 F.Supp. 882.) The logic of the Kordel and Urbuteit cases would seem to repel the conclusion that the therapeutic claims made only in random newspaper advertisements, *must* be considered and deemed to be a part of, and to be "accompanying" and "supplementing," the brief dosage statement appearing on the bottles containing appellant's drug. There is no hint in the record that these advertisements were reproduced in pamphlet or leaflet form and shipped with the drug on its interstate journey from appellant to its vendors to be distributed to ultimate consumers. No claim is made that the reading matter in the newspaper advertising appeared in any sort of literature (pamphlet, etc.) which was made available by vendors to purchasers of the drug.

■ A wholly justifiable inference is that many of those who suffer from pains of arthritis and rheumatism—and they are legion—never heard of Ri-Co Tablets, and undoubtedly never saw, or had a chance to see, appellant's newspaper advertisements. It is certain that as to them, these advertisements gave absolutely no notice of the existence of the drug, its dosage, uses and *therapeutic qualities.* We proceed upon the assumption that the "adequate directions for use" mandate of Sec. 352(f)(1) requires that *all* who might want to use a drug to relieve the pains of arthritis and rheumatism are at least entitled to a chance to somewhere find and examine a "label" which is complete enough to give them information which would lead them to purchase a drug for that purpose, or, in other words, provide sufficient information at the time of purchase upon which intelligent determination might be made as to whether the drug is one which is prescribed, recommended, or suggested for their particular form of arthritic or rheumatic ailment. We are persuaded that the law requires this much.

■ Since the kind of complete information we have indicated was not made available to the general run of victims of arthritis and rheumatism by a proper and

adequate "labeling" of appellant's drug, we must hold that it was "misbranded" under Sec. 352(f)(1) of the Act. This for the reason that what appellant insists is a proper and adequate "labeling" falls far short of legal requirements. It failed to bear "adequate directions for use" since it did not state the purpose or condition for which the drug was intended.

### The Issue Of Summary Judgment

■■ Appellant contends that a summary judgment was an "improper" remedy and may not be obtained in this case because appellee is not "a party seeking to recover upon a claim * * * or to obtain a declaratory judgment" (under Rule 56, Fed. Rules Civ. Proc. 28 U.S.C.A.) this being a condemnation proceeding and not an orthodox civil action. The contention rests on the language of the Act, Sec. 334 (b) prescribing that procedure in condemnation cases "shall conform, *as nearly as may be,* to the procedure in Admiralty". (Emphasis supplied.) The argument is predicated upon the holding in two district court cases.[4]

The heart of this part of appellant's argument is presented in the statement that "this case presents a genuine issue of fact as to which Alberty is entitled [as it requested] to a jury trial" (as in ordinary civil cases)—this because the pleadings raised the question of whether directions given by Alberty for the use of the tablets are "adequate for its intelligent and effective use." Appellant supports this contention by reliance on two cases from this Circuit[5] but we think that they do not aid its case.

Because of the nature of seizure cases, like the one at bar, a question has arisen in the past as to whether admiralty rules apply in such seizure actions under the Act. After the enactment of the present statute the Sixth Circuit, United States v. 935 Cases, etc., 136 F.2d 523, held that proceedings of the character here involved are not intended to be likened to those in admiralty *beyond the seizure of the property by process in rem under the statutes.* See also 443 Cans of Frozen Egg Product v. United States, 226 U.S. 172, 183, 33 S.Ct. 50, 57 L. Ed. 174. As appellee points out, an imposing group of authorities now support the proposition that despite a contrary holding in certain of the earlier cases dealing with enforcement of the 1938 Act, the better rule is that the Rules of Civil Procedure apply in these seizure actions as soon as the property proceeded against has been seized.[6] We prefer to accept and adopt the principle announced in these later cases and hold that the Admiralty rules do not apply in seizure actions like this beyond apprehension of the property. The lower court did not err in entering its Summary Judgment under Rule 56(a) unless it can be said that the labeling here involved was not a misbranding of the drug, a view we have refused to accept.

The record clearly discloses that a genuine issue of fact was not presented to the court. The basic question presented and properly considered by the lower court was whether the labeling on the drug failed to bear "adequate directions for use" in violation of Sec. 352(f)(1) of the Act. Having concluded, as a matter of law, that the labeling of the drug wholly and completely

4. United States v. 720 Bottles, etc., D.C. 1944, 3 F.R.D. 466; United States v. 149 Gift Packages, etc., D.C.1943, 52 F. Supp. 993.

5. Gifford v. Travelers Protective Ass'n, 9 Cir., 153 F.2d 209, and Koepke v. Fontecchio, 9 Cir., 177 F.2d 125.

6. See further: Eureka Productions, Inc. v. Mulligan, 2 Cir., 108 F.2d 760, 761; United States v. 88 Cases, etc., D.C. 1946, 5 F.R.D. 503; United States v. 300 Cans, etc., D.C.1946, 7 F.R.D. 36; United States v. 935 Cases, etc., 6 Cir., 1943, 136 F.2d 523, 525, certiorari de-

nied, Ladoga Canning Co. v. U. S., 320 U.S. 778, 64 S.Ct. 92, 88 L.Ed. 467; United States v. 20 Cases, etc., D.C. 1947, 77 F.Supp. 231; C. C. Co. v. United States, 5 Cir., 1945, 147 F.2d 820, 824; United States v. 5 Cases, etc., 2 Cir., 1950, 179 F.2d 519, 522, 524, notes 9 and 15. In this case the court said: "It now appears well established that the Rules of Civil Procedure do apply to condemnation proceedings." And see cases cited in Fed.Prac. and Procedure, Barron and Holtzoff, Vol. 1, page 219 (case cited as being in 8 F.R.D. 81 is at same page in Vol. 9 F.R.D.).

failed to conform to the requirement of this Section, the court properly held that the drug was misbranded. In this posture of the case it presented only a question of law and this clearly justified entry of the summary judgment as authorized in cases where the civil rules apply.

The lower court correctly decided the case and its judgment is affirmed.