Markus WILSON and Doug Campen, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**FRITO–LAY NORTH AMERICA, INC., Defendant.**

Case No. 12–1586 SC

United States District Court, N.D. California.

Filed October 24, 2013

Ben F. Pierce Gore, Pratt & Associates, San Jose, CA, David Malcolm McMullan, Jr., Don Barrett, P.A., Lexington, MS, Dewitt Marshall Lovelace, Sr., Lovelace Law Firm, P.A., Miramar Beach, FL, Ben F. Pierce Gore, Pratt & Associates, San Jose, CA, for Plaintiffs.

Christopher Chorba, Gibson, Dunn & Crutcher LLP, Los Angeles, CA, Andrew Santo Tulumello, Geoffrey M. Sigler, Jason Robert Meltzer, Gibson Dunn & Crutcher LLP, Washington, DC, Jenna Musselman Yott, Gibson Dunn And Crutcher, San Francisco, CA, for Defendant.

1. When the Court discusses these non-pur-

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT*

SAMUEL CONTI, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Now before the Court is Defendant Frito–Lay North America, Inc.'s ("Defendant") motion to dismiss Plaintiffs Markus Wilson and Doug Campen's ("Plaintiffs") second amended complaint. ECF Nos. 47 ("SAC"), 59 ("MTD"). The motion is fully briefed, ECF Nos. 64 ("Opp'n"), 68 ("Reply"), and suitable for decision without oral argument, Civ. L.R. 7–1(b). For the reasons explained below, the Court GRANTS in part and DENIES in part Defendant's motion.

## II. BACKGROUND

### A. Factual Background

The parties are familiar with this case's basic facts, as summarized below. Defendant makes snack food products, including "Lay's Classic Potato Chips," "Lay's Classic Potato Chips," "Lay's Honey Barbeque Potato Chips," "Lay's Kettle Cooked Mesquite BBQ Potato Chips," "Cheetos Puffs," and "Fritos Original Corn Chips" (collectively the "Purchased Products"). Plaintiffs bought the Purchased Products, and claim to have been misled by their labels, between March 29, 2008 and March 29, 2012 (the "Class Period"). In their SAC, they also bring claims on behalf of a putative class of people in California and elsewhere who bought a variety of Defendant's other Products that the named Plaintiffs did not buy.[1]

chased products alongside the Purchased

Plaintiffs allege that Defendant's marketing of the Products is misleading because: (1) some Products are labeled "All Natural" despite containing artificial or unnatural ingredients, flavoring, coloring, or preservatives; (2) some Products are labeled as containing "0 Grams Trans Fat" despite having total fat levels that render such a claim misleading; (3) some Products contain MSG but are labeled as having "No MSG"; and (4) Defendant's website, whose address appears on some Products' labels, is a "label" subject to FDA regulations, and it makes claims about the Products that are misleading and unlawful.

Plaintiffs claim that they care about buying healthy foods, e.g., foods with artificial ingredients or high levels of fat, and that they would not have bought any of the Products if they knew that Defendant's claims about such ingredients were not true. *See, e.g.,* SAC ¶¶ 46–47, 60, 64–65, 80, 82, 86–87, 104, 128, 141, 154.

### B. *Procedural Background*

In their FAC, Plaintiffs asserted nine causes of action against Defendant: (1–3) violations of the "unlawful," "unfair," and "fraudulent" prongs of California's Unfair Competition Law's ("UCL"), Cal. Bus. & Prof.Code § 17200, *et seq.;* (4–5) violations of the "misleading and deceptive" and "untrue" prongs of California's False Advertising Law ("FAL"), Cal. Bus. & Prof.Code § 17500, *et seq.;* (6) violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ.Code § 1750, *et seq.;* (7) restitution based on unjust enrichment or quasi-contract; (8) breach of warranty under California's Song–Beverly Act, Cal. Civ.Code § 1790, *et seq.;* and (9) breach of

warranty under the federal Magnuson–Moss Act, 15 U.S.C. § 2301, *et seq.*

Defendant moved to dismiss the FAC. The Court granted Defendant's motion in part and denied it in part, dismissing Plaintiffs' breach of warranty claim with prejudice but granting Plaintiffs leave to amend their other claims. ECF No. 46 ("Apr. 1 Order") at 31–32. Specifically, the Court allowed Plaintiffs to plead more specific facts about the Non–Purchased Products and about how Defendant's website could constitute "labeling" such that claims asserted on it could predicate Plaintiffs' various causes of action.

In their SAC, Plaintiffs include more facts about the Non–Purchased Products and Defendant's website. With their breach of warranty claim having been dismissed with prejudice, and with Plaintiffs having chosen not to re-plead their restitution claim, the only causes of action remaining in the case are Plaintiffs' UCL, FAL, and CLRA claims. The SAC elaborates on Plaintiffs' theories for their UCL, FAL, and CLRA claims, and also alleges new violations based on the Non–Purchased Products. Defendant now moves to dismiss the SAC.

### III. *LEGAL STANDARD*

#### A. *Motions to Dismiss*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988). "When there are well-pleaded factual alle-

---

Products, the Court refers to them collectively as the "Products." Separately, they are the

"Non–Purchased Products".

gations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The court's review is generally "limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir.2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)).

### B. *Rule 9(b)*

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.2009). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks and citations omitted).

### C. *Leave to Amend*

■ Under Federal Rule of Civil Procedure 15(a), leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 ... [is] to facilitate decision[s] on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) (internal citations, quotation marks, and alterations omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on [the] part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir.2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)) (alterations in original).

■ "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir.2009) (internal quotations, citations, and alterations omitted). Indeed, repeated failure to cure a complaint's deficiencies by previous amendment is reason enough to deny leave to amend. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir.2008) (citing *Foman*, 371 U.S. at 182, 83 S.Ct. 227; *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) ).

## IV. *DISCUSSION*

### A. *The Statutory Framework*

The Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343(r), *et seq.*, is the operative statute in this matter.

The many subsections of 21 U.S.C. § 343 establish the conditions under which food is considered "misbranded." Generally, food is misbranded under 21 U.S.C. § 343(a)(1) if "its labeling is false or misleading in any particular." Sections 343(q) and (r) regulate the information that must be included in all packed products' "nutrition box," as well as all other nutrient content claims that appear elsewhere on the label.

Section 343(q) governs information that must be disclosed about certain nutrients in food products—principally in the nutrition box area. Section 343(r) discusses "nutrition levels and health-related claims" about food products made anywhere on their labels. It governs all voluntary statements about nutrition content or health information that a manufacturer includes on the food label or packaging. The Food and Drug Administration ("FDA") has classified these nutrient claims as "express" (e.g., "100 calories"), "implied" (e.g., "high in oat bran"), and "health claims," which "characteriz[e] the relationship of any substance to a disease or health-related condition." 21 C.F.R. §§ 101.13, 101.14; see also Chacanaca v. Quaker Oats Co., 752 F.Supp.2d 1111, 1116–17 (N.D.Cal.2010) (describing the statutory scheme). Section 343(r) clarifies that it does not govern nutrition content claims made under Section 343(q) (i.e., inside the nutrition box), though an accompanying regulation, 21 C.F.R. § 101.13, clarifies that "[i]f such information is declared elsewhere on the label or in labeling, it is a nutrition content claim and is subject to the requirements for nutrient content claims [under Section 343(r)]." See Chacanaca, 752 F.Supp.2d at 1117.

Plaintiffs' state law claims are based on California's Sherman Food, Drug, and Cosmetic Act ("Sherman Act"), Cal. Health & Safety Code § 109875 et seq., which adopts and incorporates the FDCA. See Sherman Act § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal acts in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."). This specifically includes provisions of the FDCA and NLEA that set forth food labeling and packing requirements.

**B.** *Standing as to the Non–Purchased Products*

██ To satisfy Article III standing, plaintiffs must allege: (1) a concrete, particularized, actual or imminent injury-in-fact; (2) that the injury is traceable to the defendant's action; and (3) that a favorable ruling could redress the injury. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Plaintiffs in a case like this one can show Article III standing by alleging that they purchased a product they otherwise would not have purchased, or that they spent too much on such a product, in reliance on a defendant's representations in ads or on labels. *See, e.g., Brazil v. Dole Food Co., Inc.*, 935 F.Supp.2d 947, 960–962 (N.D.Cal. Mar. 25, 2013). It is Plaintiffs' burden to show standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

The parties do not dispute whether Plaintiffs have pled standing as to the Purchased Products. The question is whether they have standing as to the Non–Purchased Products.

In putative class actions like this one, this Court has often held that plaintiffs can demonstrate standing at the pleading stage if they plead sufficiently detailed facts that the non-purchased products are "substantially similar" to the purchased

products for which they have standing. *See, e.g., Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C 11–2910 EMC, 2012 WL 2990766, at *11 (N.D.Cal. July 20, 2012). Factors that other courts have considered include whether the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling. *See id.* at * 13.

▮ Defendant argues that Plaintiffs fail to establish standing or state a claim for the Non–Purchased Products. MTD at 5–6. First, Defendant notes that Plaintiffs added eighty-five new products—the Non–Purchased Products—to their SAC. Plaintiffs do not plead to have bought these products. Instead they simply provide long lists of products that they flatly state contain unlawful or misleading statements. SAC ¶¶ 44 ("All Natural" labeling), 62 ("All Natural" and "No MSG" labeling), 84 ("0 Grams Trans Fat" labeling). The SAC provides no other detail about these products. Defendant argues that because Plaintiffs allege no facts stating that the Non–Purchased Products are "the same or similar" to the Purchased Products with respect to Plaintiffs' claims, Plaintiffs cannot—even in a putative class action—assert causes of action as to products that are not in fact substantially similar to the products they actually bought. *See* MTD at 6–9. Defendant also notes that while Plaintiffs include purported images of the Non–Purchased Products' labels in their SAC, *see* SAC Ex. 8 (product labels), the SAC does not state that any Plaintiff actually saw these labels. MTD at 9–10.

Plaintiffs oppose these arguments, contending that the eighty–five Non–Purchased Products are "substantially similar" to the five Purchased Products. According to Plaintiffs, all of the Products are "potato chips, corn chips, and puffed corn products," all of which they allege to be unlawfully or misleadingly labeled. *See* Opp'n at 3–4. Plaintiffs claim that all of the Products are made by the same manufacturer and, with the exception of flavors, contain the same ingredients and implicate the same concerns. *Id.* at 4.

Defendant is right. Plaintiffs have failed to allege substantial similarity among the Purchased Products and the Non–Purchased Products. Plaintiffs have taken lists of snack foods, appended them to paragraphs of their SAC, and asserted in their briefs—not in their pleadings— that they are all basically the same. The Court is not convinced, and the exhibits Plaintiffs provide do not help. Plaintiffs take no time to explain how each of the eighty-five new Products are actionably mislabeled, and the Court is not inclined to pore over each ingredient list and guess. The Court instructed Plaintiffs to be clear about why any Non–Purchased Products were similar enough to the Purchased Products for standing purposes. Order at 12 (setting forth clear guidelines for amendment on this point). Plaintiffs fail to do so.

In their SAC, Plaintiffs simply provide a list of Non–Purchased Products, attach barely-legible labels (purportedly as they appeared during the Class Period), and assert that these labels are unlawful or misleading. *See* SAC ¶¶ 42, 62, 84. This is not enough—the Court cannot just assume that every one of the Non–Purchased Products' labels is actionable in the same way as the more fully described Purchased Products' labels are. For example, the label on the purportedly actionable "Lay's Balsamic Sweet Onion" package, SAC Ex. 8 at 25, has a stamp that, unlike any other product, reads "Made With All Natural Potatoes and Seasonings," which is not the same as the labels discussed in

the Court's Order on the FAC, which state "Made With All Natural Ingredients." Similarly, the "Miss Vickie's Sea Salt & Vinegar" package, SAC Ex. 8 at 35, has a stamped ribbon that reads only "All Natural."

The Court will not assume that each of these subtly different Products is like all the others. To meet the plausibility standard of Rule 8, Plaintiffs have to say more, especially when they are asserting standing as to Products they did not purchase— otherwise their pleadings amount to unacceptably bare legal conclusions. *Iqbal*, 556 U.S. at 663, 129 S.Ct. 1937; *Twombly* 550 U.S. at 570, 127 S.Ct. 1955. Plaintiffs' SAC's allegations about the Non–Purchased Products are not detailed or plausible enough to survive a motion to dismiss.

Plaintiffs' boilerplate claims as to the Non–Purchased Products are therefore DISMISSED. This dismissal is with prejudice, since the Court has already given Plaintiffs leave to amend on this point, as well as clear instructions on how to do so successfully.

### C. *Whether Websites Mentioned on Product Labels Constitute Labeling*

In their FAC, Plaintiffs contended that Defendant's website constitutes "labeling" of the Products under the FDCA. The Court dismissed Plaintiffs' claims that were based on the website, because the Court did not find that Plaintiffs had sufficiently alleged that any of Plaintiffs' cited website language was drawn closely enough to any Product to merit the website's constituting "labeling" under the FDCA.

■ Now Plaintiffs cite extensive language from the website and claim that it explains and supplements Defendant's other statements about the Products, such that the Court should find that the website language constitutes labeling. *See* Opp'n at 9–10 (citing SAC ¶¶ 105–54). Plaintiffs also cite several FDA warning letters about other companies' websites, which they say deserve deference. *Id.* at 10–12.[2]

Section 321(m) defines "labeling" as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." The issue here is whether statements made on the www.fritolay. com website "accompany" the Named Products such that they can be classified as "labeling" under the FDCA.

■ It is true that statements not actually printed on a label itself can constitute "labeling" for FDCA purposes. What matters is whether the separate material serves the purpose of labeling, which is to supplement or explain the product. *Kordel v. United States*, 335 U.S. 345, 349–350, 69 S.Ct. 106, 93 L.Ed. 52 (1948) ("One article or thing is accompanied by another when it supplements or explains it ... No physical attachment one to the other is necessary. It is the textual relationship that is significant."); *Alberty Food Prods. Co. v. United States*, 185 F.2d 321, 324–25 (9th Cir.1950) (citing *Kordel* for this proposition); *see also United States v. Harkonen*, No. C 08–0164 MHP, 2009 WL 1578712, at *9 (N.D.Cal. June 4, 2009) (stating that *Kordel* " remains the leading Supreme Court authority on the scope of the labeling provision."). In this matter, Plaintiffs base their claims on the fact that some of the Named Products include

---

**2.** Plaintiffs also cite a third-party website's language about MSG and food labeling. Opp'n at 22 n.11. The Court declines to take judicial notice of this website, since it has not been referenced in any pleading and Plaintiffs do not explain why it should be incorporated now.

phrases like "Visit our website @frito-lay.com" in tiny print at the bottom of their back labels. From this Plaintiffs claim that Defendant's marketing language on the www.fritolay.com or www.lays.com websites constitutes mislabeling under the FDCA.

■ The Court is not persuaded by Plaintiffs' argument that the Court owes deference to two warning letters that the FDA sent to two other companies. It is true that an agency's informal interpretation of its own ambiguous regulation is controlling unless "plainly erroneous or inconsistent with the regulation." *Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006) (quoting *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)). However, no party in this case has contended that the FDA's regulations on labeling are ambiguous, and the Court does not find that they are. Indeed, the FDA's regulation is very clear on this point, and when the FDA has directly referenced it, the agency's instruction mirrors the Supreme Court precedent discussed above:

> [I]f the label for a product contained a statement that referred the consumer to a specific website for additional information about a claim for the product, the website is likely to be 'labeling.' The websites, in these cases, are considered written, printed, or graphic matter that supplements or explains the product and is designed for use in the distribution and sale of the product.

SAC Ex. 20 (FDA Letter, "Guidance for Industry and FDA: Dear Manufacturer Letter Regarding Food Labeling") at 3.

■ On this point, the Court declines to analogize to the situations the FDA considers in its warning letters. Those letters do not address how the FDA regulations on labeling are to apply. Instead they discuss specific websites that the FDA had independently concluded constituted labeling. The FDA has made no such specific conclusions about Defendant's Products in this case, and the Court does not find that labels' references to Defendant's website constitute "labeling" for FDA regulatory purposes. The website address appears below Defendant's physical address, not near the ingredients list or any nutritional facts. Nowhere on any Product's packaging does Defendant direct consumers to its website for more facts about the labeled Product. The Court therefore does not find that Defendant's website constitutes "labeling" under the FDCA.

■ "Labeling" as a regulatory matter aside, Plaintiffs also fail to plead that they ever saw, read, or were even aware of any website before this suit. Plaintiffs admit this but claim it is irrelevant because, according to them, there is no requirement that a purchaser rely on a particular statement in order to bring a UCL unlawfulness claim based on that statement. Opp'n at 13. According to Plaintiffs, misbranded food products are unlawful by nature and therefore actionable. *Id.* Plaintiffs are wrong. Holding for them on this point would be an affront to state and federal standing rules. Federal standing requires an injury, and California law requires UCL plaintiffs to plead injury and reliance—a legislative decision based specifically on curtailing lawsuits by plaintiffs who have had no contact with advertising, for example. *Kwikset Corp. v.Super. Ct.*, 51 Cal.4th 310, 326, 120 Cal.Rptr.3d 741, 246 P.3d 877 (Cal.2011) (affirming that UCL and FAL claims must be pled with injury and reliance). Ignoring these basic legal rules would invite lawsuits by all manner of plaintiffs who could simply troll grocery stores and the Internet looking for any food product that might form the basis of a class-action lawsuit. Surely that is

not the point of these consumer protection laws.

Since Plaintiffs have twice failed to indicate how Defendant's website could form the basis of a good-faith UCL, FAL, or CLRA cause of action, Plaintiffs' claims based on Defendant's website are DISMISSED WITH PREJUDICE.

### D. *Plaintiffs' Remaining Claims*

The CLRA, FAL, and UCL, which are the basis of Plaintiffs' first through sixth causes of action, are California consumer protection statutes. The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof.Code § 17200. The FAL makes it unlawful to make or disseminate any statement concerning property or services that is "untrue or misleading." *Id.* § 17500. The CLRA also prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ.Code § 1770.

Plaintiffs' case, broadly, has two parts: (1) the UCL unlawfulness claims based on Plaintiffs' contention that Defendant's products are misbranded as a matter of law and therefore are predicates for a UCL unlawfulness violation, and (2) the rest of Plaintiffs' tort claims, which are premised on Plaintiffs' allegations that Defendant's labels are misleading, unfair, and fraudulent. *See* SAC ¶¶ 4, 8.

### i. *Plaintiffs' Misbranding Theory*

Plaintiffs' UCL "misbranding theory"—as distinct from the portion of their UCL claim based on Plaintiffs allegedly having been misled or deceived by Defendant's labels—is that Defendant's labels are unlawfully misbranded under the FDCA and the Sherman Law, and are therefore actionable under the UCL's unlawfulness prong even absent allegations of reliance. *See* Opp'n at 13–14. In other words, Plaintiffs' theory of liability for this facet of their UCL claim is that Defendant's

mere alleged violation of the underlying regulations, without more, is enough to state a claim for a UCL unlawfulness prong violation.

As a threshold issue, the parties dispute whether Rule 9(b)'s particularity requirements govern Plaintiffs' UCL unlawfulness claims. The Court finds that it does at least as to Plaintiffs' UCL unlawfulness claims based on the CLRA and FAL, because all of those theories rely on allegations of a unified course of fraudulent conduct—i.e., the mislabeled Products. *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir.2003); *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1127 (9th Cir. 2009) (holding that, where "TAC allege[d] a unified fraudulent course of conduct," claims were "grounded in fraud" and the "entire complaint" had to be pled "with particularity"). Plaintiffs contend that their misbranding theory is not grounded in misrepresentation or deception, but the Court finds otherwise. It is clear from Plaintiffs' SAC that the behavior that Plaintiffs allege violated FDA regulations and the Sherman Law is misrepresentation or deception, because Plaintiffs are asserting that Defendant used deceptive labeling practices to hide the truth of the Products' ingredients. However, the Court finds that this dispute is a wash: Plaintiffs are subject to Rule 9(b) pleading standards for their unlawfulness claim, but they met it. The only question is whether they must also plead reliance for an unlawfulness claim, as they must for UCL unfairness and fraud claims.

According to Plaintiffs, unlawful conduct is the only necessary element for UCL unlawfulness liability, unlike the fraudulent or unfairness prongs which require particularity as to reliance and injury. *See id.* This is incorrect. Plaintiffs' "misbranding theory" is not divorced from its other UCL

theories: they are all connected, since, as noted above, Plaintiffs' misbranding theory is essentially of a piece with their other theories.

The California Supreme Court has interpreted the UCL as requiring plaintiffs to have suffered economic injury "as a result of" the unfair competition they allege. *Kwikset,* 51 Cal.4th at 326, 120 Cal.Rptr.3d 741, 246 P.3d 877. Otherwise plaintiffs who had no contact with the allegedly unlawful activity would have standing to sue. This would, as the Court noted above and as the California Supreme Court stated in *Kwikset,* be an invitation to shakedown suits. *See Kwikset,* 51 Cal.4th at 335 n. 21, 120 Cal.Rptr.3d 741, 246 P.3d 877 (stating that this rule exists to curb "shakedown suits by parties who had never engaged in any transactions with would-be defendants"). Other courts agree with this interpretation, finding that in accordance with California law, plaintiffs must show that they lost money or property because of reliance on an allegedly unlawful practice, in order to establish standing for UCL unlawfulness claims. *See, e.g., In re iPhone Application Litig.,* 844 F.Supp.2d 1040, 1071 (N.D.Cal.2012); *In re Actimmune Mktg. Litig.,* No. C 08–02376 MHP, 2010 WL 3463491, at *8 (N.D.Cal. Sept. 1, 2010), *aff'd,* 464 Fed.Appx. 651 (9th Cir. 2011) (alleging unlawfulness alone, without reliance, "only accomplishes half of [the plaintiff's] burden in a UCL unlawful prong action," since "as a result of" in the statutory language places a burden of reliance on the plaintiff); *Durell v. Sharp Healthcare,* 183 Cal.App.4th 1350, 1363, 108 Cal.Rptr.3d 682 (Cal.App.2010).

■■■■■ "Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct." *In re Tobacco II Cases,* 46 Cal.4th 298, 326, 93 Cal.Rptr.3d 559, 207 P.3d 20 (Cal.

2009) (citation and alteration omitted). "A plaintiff may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence[,] the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Id.* (citation and quotation marks omitted).

■■■■ The issue at this point is therefore whether Plaintiffs establish, at the pleading stage, that Defendant's alleged violation of labeling laws alone—separate from any alleged fraud or deception connected with Plaintiffs' reliance or injury—supports a UCL unlawfulness claim. On this point, the Court finds for Defendant. To the extent that Plaintiffs' first cause of action for UCL unlawfulness relies solely on Defendant's alleged violation of the Sherman Law or FDA regulations, that claim is DISMISSED WITH PREJUDICE because Plaintiffs fail to allege reliance under this theory. Plaintiffs' argument that they were harmed because the allegedly misbranded products were "legally worthless and had no economic value," *see* Opp'n at 13, is insufficient to save this claim. Plaintiffs' SAC supports their allegations of having been harmed by being deceived into buying Products whose ingredients they specifically wanted to avoid, not that they were harmed in some non-specific way by purchasing Products that they later learned were "legally worthless."

Plaintiffs do, however, plausibly allege violations of the FAL and CLRA, as the Court found in its April 1 Order. Accordingly, Plaintiffs' UCL unlawfulness claim survives to the extent that it is predicated on violations of those laws.

### ii. *"All Natural" and "0 Grams Trans Fat" Claims*

Defendant argues that Plaintiffs' claims based on Defendant's "All Natural" and "0

Grams Trans Fat" statements should be dismissed, because Plaintiffs have failed to allege injury, deception, or reliance under *Twombly* and Rule 9(b). Reply at 10. Plaintiffs assert that this is an attempt to reargue the motion to dismiss that the Court denied, *see* Opp'n at 15, 19, but Defendant insists that it is raising new arguments as to the sufficiency of Plaintiffs' pleadings, Reply at 10.

The Court agrees with Plaintiffs. The Court has already found Plaintiffs' pleadings on these points sufficient to survive a motion to dismiss. If it had not, it would have dismissed them under *Twombly* and Rule 9(b) in its first Order. The Court declines to reconsider the matter. Defendant's motion on this point is DENIED. Plaintiffs plead enough about having been misled or deceived by these claims to survive a motion to dismiss.

### iii. *"No MSG" Claims*

In the April 1 Order, the Court found that Plaintiffs' claims based on Defendant's "No MSG" labels were not preempted by federal regulations. Apr. 1 Order at 19–20. The regulation in question was actually the FDA's interpretation of its own rules about MSG, made in a November 2012 announcement that the Court found warranted deference. *Id.* However, the Court noted that while the FDA's November 2012 regulatory statement was a binding interpretation of the FDA's own rules, the parties had not explained how (if at all) that interpretation could apply retroactively to Defendant's labels as they appeared during the Class Period, prior to the November 2012 statement. *Id.* at 21 n.4. Now the parties dispute whether the FDA's binding interpretation applies retroactively, thereby making Defendant's pre-November 2012 "No MSG" labels actionable. Defendant contends that Plaintiffs' claims are preempted because they would impose restrictions that did not exist before November 2012.

Plaintiffs claim that the November 2012 statement was just an affirmation of an FDA policy that had been in place for decades: in short, any ingredient that is a source of MSG as opposed to being MSG itself (like torula yeast) will bar a food product from being labeled "No MSG," even though that ingredient itself must be labeled by its common name in the product's ingredient box. *See* Opp'n at 21–24. So according to Plaintiffs, any Product labeled "No MSG" prior to November 2012 would still be actionably mislabeled if it contained an ingredient that was a source of MSG. *Id.* Plaintiffs point to several FDA warning letters, sent between 1990 and 1996, which all inform companies that their food products were mislabeled because the products contained ingredients that were sources of MSG. *See* Opp'n at 22–23 (citing Opp'n Exs. 4–5). Plaintiffs also cite an August 31, 1995 FDA Backgrounder that states "the FDA considers foods whose labels say 'No MSG' or 'No Added MSG' to be misleading if the food contains ingredients that are sources of free glutamates, such as hydrolyzed protein." Opp'n Ex. 15 ("1995 Backgrounder").[3]

Defendant first argues that the Court had ruled that Plaintiffs' claims could proceed as to claims based on purchases made after November 19, 2012. Reply at 13. That is a misreading of the April 1 Order: the Court expressly made no finding as to retroactivity there. *See* Apr. 1 Order at 19–21. The more important parts of Defendant's argument concern the significance of the FDA's 1995 Backgrounder and the mid–1990s warning letters. First, Defendant argues that the 1995 Backgrounder was only evidence of

3. The Court takes judicial notice of these documents under Federal Rule of Evidence 201.

an abandoned rule, not of FDA Policy. Reply at 13. Second, Defendant argues that the warning letters Plaintiffs cite were sent during 1990 and 1996, when the FDA was considering the rule—discussed in the 1995 Backgrounder—that it later abandoned. *Id.* Finally, Defendant claims that in any event, FDA policy until November 19, 2012 only required ingredients containing MSG to be labeled separately from MSG, and nothing more. *Id.* Defendant's arguments are underpinned by the Court's conclusion that the FDA's November 2012 statement clarified an ambiguous regulation, and by the Ninth Circuit's holding that retroactive application of such a regulatory clarification contravenes due process. *United States v. AMC Entm't, Inc.,* 549 F.3d 760, 770 (9th Cir.2008).

Defendant is correct. Plaintiffs cite the 1996 proposed rulemaking and several pre–1996 warning letters, but as the Court stated in its April 1 Order, the FDA's regulations between then and November 19, 2012 were ambiguous. The November 2012 statement resolved that ambiguity. To insist that Defendant should have been complying with a regulation that was not explicitly clarified until November 19, 2012 would buck due process and Ninth Circuit precedent. The Court declines to do either.

Before the FDA's November 2012 clarification, the only information about the FDA's MSG regulations that would have been available to Defendant were warning letters based on specific factual circumstances and a proposed rule that was abandoned. Defendant was simply not on notice during the Class Period that its labels did not comply with the FDA rule. *AMC Entm't,* 549 F.3d at 770. These amount, as the Court found concerning pre–2012 FDA regulations generally, to ambiguous statements about the regulation. *See FCC v. Fox Television Stations, Inc.,* —— U.S.

——, 132 S.Ct. 2307, 2319, 183 L.Ed.2d 234 (2012) (holding that an isolated, ambiguous agency statement did not fulfill the fair notice requirement when the government wanted to impose a large fine on a television network). Plaintiffs' claims based on Defendant's "No MSG" labels predating the November 19, 2012 clarification are DISMISSED WITH PREJUDICE.

### iv. *Plaintiffs' Non–California Purchases*

Finally, Defendant states that Plaintiffs' SAC seeks to expand their case to include a nationwide putative class of consumers. MTD at 22. Defendant argues that such claims must fail, because Plaintiffs sue only based on violations of California law, and the Supreme Court of California has clarified that state statutes like the UCL, FAL, and CLRA presumptively do not apply to occurrences outside California. *Id.* (citing *Sullivan v. Oracle Corp.,* 51 Cal.4th 1191, 1207, 127 Cal.Rptr.3d 185, 254 P.3d 237 (Cal.2011)). Plaintiffs respond that Defendant's argument is better suited for the class certification stage, not a motion to dismiss. Opp'n at 24–25.

 Defendant is correct. California law presumes that the legislature did not intend a statute to be "operative, with respect to occurrences outside the state, ... unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan,* 51 Cal.4th at 1207, 127 Cal.Rptr.3d 185, 254 P.3d 237 (citations and quotations omitted). With regard to the UCL, FAL, and CLRA, non-California residents' claims are not supported "where none of the alleged misconduct or injuries occurred in California." *Churchill Village, LLC v. Gen. Elec. Co.,* 169 F.Supp.2d 1119, 1126 (citing *Norwest Mortg. Inc. v.Super. Ct.,* 72 Cal.App.4th 214, 222, 85 Cal.Rptr.2d 18 (Cal.App.1999)); *see also In re Toyota Mo-*

*tor Corp.,* 785 F.Supp.2d 883, 918 (C.D.Cal. 2011). In determining whether California law should apply to a certain claim, courts consider facts like where the defendant is located, where the class members are located, and where decisions about the behavior in question were made. *See In re Toyota,* 785 F.Supp.2d at 917. In this case, Plaintiffs are located in California, Defendant is located in Texas, and Plaintiffs have not alleged any activity within California except their own purchase of the Purchased Products.

 First, the Court is not persuaded by Plaintiffs' argument that this issue should wait until the class certification stage. Class allegations typically are tested on a motion for class certification, not at the pleading stage. *See Collins v. Gamestop Corp.,* C10–1210–TEH, 2010 WL 3077671, at *2 (N.D.Cal. Aug. 6, 2010). However, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Thus, some courts have struck class allegations where it is clear from the pleadings that class claims cannot be maintained. *E.g., Sanders v. Apple Inc.,* 672 F.Supp.2d 978, 990 (N.D.Cal.2009).

Second, at this point, those claims fail as a matter of law because nothing in Plaintiffs' complaint alleges that any of the out-of-state purchases were directed from California or had anything to do with California. Plaintiffs' allegations on these points amount to nothing more than conclusions of law without any supporting facts. Non–California citizens who made purchases in California could assert the same California causes of action that Plaintiffs do, but there is no plausible way for a non-California citizen who purchased Defendant's Products outside California to bring these claims.

Plaintiffs' California law claims based on activity occurring in other states are all DISMISSED WITH PREJUDICE. In two amended complaints, Plaintiffs have failed to give a plausible account of how or why a non-California plaintiff could sue under California tort law for purchases made outside the state from a Texan company that, at most, advertises and sells its products in California.

### V. CONCLUSION

For the reasons explained above, Defendant Frito–Lay North America, Inc.'s motion to dismiss Plaintiffs Markus Wilson and Doug Campen's second amended complaint is GRANTED in part and DENIED in part. The Court orders as follows:

- Plaintiffs' claims based on the Non–Purchased Products are DISMISSED WITH PREJUDICE.
- Plaintiffs' claims based on the "All Natural" and "0 Grams Trans Fat" statements are undisturbed. Defendant's motion is DENIED as to those claims.
- Plaintiffs' UCL unlawfulness claim is DISMISSED WITH PREJUDICE to the extent that it is based on misbranding laws.
- Plaintiffs' "No MSG" claims are DISMISSED WITH PREJUDICE to the extent that those claims are predicated on activity predating the FDA's November 19, 2012 guidance.
- Plaintiffs' claims based on purchases that occurred outside California are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.